Goff, Circuit Judge.
This is an action of ejectment brought by the plaintiffs in error against defendant in error in the circuit court of the United States for the western district of Virginia, held at Abingdon. It was tried at the fall term, 1891, the jury finding a verdict for defendant, upon which the court entered judgment. The case is now before this court on writ of error obtained by the plaintiffs, the assignments of error in the petition being 35 in number, of which 21, those from 2 to 16, inclusive, and 21, 27, 32, 33, 34, and 35 are not referred to in the briefs filed by counsel for plaintiffs in error, and will be treated by the court as abandoned. In fact, counsel in argument of the case conceded that they were not relied upon. Rule 24 of this court provides that “the brief shall contain a specification of the errors relied upon which, in cases brought up by writ of error, shall set out separately and particularly each error asserted and intended to be urged F Most of the remaining errors assigned ignore the rules of the court applicable thereto. As this is a matter of great importance, we call attention to it now. The twenty-fourth rule requires that the specification shall quote the full substance of the evidence admitted or rejected, when the error alleged is to the admission or to the rejection of evidence. This provision of that rule has been ignored by plaintiffs in error, and the requirements of rule 11 have not been observed in the preparation of the petition for a writ of error in this case. The object of the rules is to so present the matter raised by the assignment of error that this court may understand what the question is it is called upon to decide without going beyond the assignment itself, and also that the party excepting may be confined to the objection taken at the time, which must then have been stated specifically. Hinde v. Longworth, 11 Wheat. 199; Camden v. Doremus, 3 How. 515; Burton v. Driggs, 20 Wall. 125. The rule is now well established that only those matters can be assigned for error that were brought to the attention of the court below during the progress of the trial, and passed upon directlv or indirectly. Springer v. U. S., 102 U. S. 586; Wood v. Weimar, 104 U. S. 786.
The assignments and the bills of exceptions are not in accordance with the rule of practice, requiring that they shall show that there was evidence applicable to the instruction given or refused. The exceptions to-the giving of the instructions asked for by defendant are so general as to render them obnoxious to the rules regulating the same. Insurance Co. v. Raddin, 120 U. S. 183, 7 Sup. Ct. Rep. 500; Mining Co. v. Fraser, 130 U. S. 611, 9 Sup. Ct. Rep. 665; Block v. Darling, 140 U. S. 234, 11 Sup. Ct. Rep. 832. In this last-mentioned case Mr. Justice Harlan said:
“The general exception to all and each part of the foregoing charge and instructions suggests nothing for our consideration. It was no more than a general exception to the whole charge. The court below was entitled to a distinct specification of the matter, whether of fact or of law, to which objection was made. The charge covered all the facts arising out of the counterclaim, and clearly stated the law which, in the opinion of the court, governed *841 the ease. If its attention had been specifically called at the time to any particular part of the charge that was deemed erroneous, the necessary correction could have been made. An exception ‘to all and each part’ of the charge gave no information whatever as to what was in the mind of the excepting party, and therefore gave no opportunity to the trial court to correct any error committed by it. Harvey v. Tyler, 2 Wall. 328, 339; Beckwith v. Bean, 98 U. S. 266, 284; Moulor v. American Ins. Co., 111 U. S. 335, 337, 4 Sup. Ct. Rep. 466.”
In Deitsch v. Wiggins, 15 Wall. 539, Mr. Justice Strong said:
“Most of the-assignments of error have been made in total disregard of the twenty-first rule of this court. That rule is necessary to the disposition of the business which presses upon us, and it is our intention hereafter to enforce strict compliance with its demands. If errors are not assigned, in the manner required, the assignments will be treated as if not made, at all, and we feel justified in passing without notice the greater number of those which are alleged to appear in this record.”
The record in this case, and the brief of counsel for plaintiffs in error, were filed so soon after the organization of and the adoption of rules by this court that it is doubtful if the attention of counsel had been called to the requirements of the regulations alluded to. For this reason it is not the intention of the court to disregard the assignments of error relied on in this case, but they will be considered in connection with the assistance afforded by the oral arguments, and the aid derived from an inspection of the record. It is hoped that this reference to the necessity for a strict adherence to the mode of procedure prescribed by the rules is all that will be required to secure in the future the full co-operation of counsel in their enforcement, as it will be our duty hereafter to require due observance of their requirements. It is proper to say in this connection that they have been departed from in the preparation of a number of cases heretofore submitted to this court.
The declaration filed in this case contains two counts. Plaintiffs in the first seek to recover an undivided one-third interest in a tract of 62,-000 acres of land, situated in Wise county, Va. Under the second count, they seek to recover an undivided one-third interest in a tract of about 48,000 acres of land, part of the tract first mentioned. Defendant pleaded not guilty. What is the case as it appears from the record? The state of Virginia by patent dated January 30, 1796, granted to Nathan Fields, John Johnston, and Nathaniel Taylor a certain boundary of land in that state, in Lee county, containing 62,000 acres. Since then the county of Wise has been created, and includes within its boundaries the former territory of Lee county, embracing the land so granted. The plaintiffs claim that on the 30th day of April, 1888, they purchased the interest of the heirs of Nathan Fields in the land mentioned, and that by deed of that date they became tenants in common with the vendees of the other patentees of said land and those claiming under them; that the defendant is in possession of a great part of the land, claiming the fee-simple title thereto; and that they, the plaintiffs, *842 are entitled to recover a one-third interest thereof, being innocent purchasers of the same for value from the heirs of Nathan Fields, who died in 1820.
Defendant claims that plaintiffs have not shown by proper evidence that their grantors are the heirs of Nathan Fields, the patentee, who, defendant insists, sold and conveyed his interest in the land to his copatentee, Nathaniel Taylor, by deed dated January 1, 1796. Defendant also claims that the title to the entire tract of land was, under the provisions of certain acts of the legislature of Virginia, forfeited to the “ Literary Fund” of that state in 1816, and that, consequently, the plaintiffs took no title with the deed to them in 1888, and cannot recover in this action; also that one J. G. Olinger, under whom defendant claims, became.the owner of 48,200 acres of the 62,000-acre boundary, by a purchase at a tax sale made by the sheriff of Lee county in 1834, by virtue of the provisions of an act of the legislature of Virginia passed March 10, 1832, the land having been conveyed to him by Alexander W. Mills, clerk of the county court of that county, by deed dated December 7, 1836. Defendant also insists that, if the deed made by Mills to Olinger did not pass to him an absolute title to the entire tract of 48,200 acres, —the sale of the land having been made for delinquency in the name of Taylor’s heirs,—still, as by the deed the entire tract of land was conveyed by metes and bounds, the same was color of title thereto; and as Olinger entered into the possession of the land immediately, claiming title to the whole, and exercised acts of ownership over it until his death in 1863, and that as his heirs, and his and their vendees, have continued such possession and such acts of ownership from the death of Olinger down to the institution of this suit,—a period in all of over 50 years,—the plaintiffs, and those under whom they claim, not having been in the actual possession of any part of the land during said time, defendant has acquired a good and perfect title to the land by adverse possession.
The first assignment of error reads as follows:
“That the court should not have admitted to the jury as evidence the copy of a copy of an alleged deed from Nathan Fields to Nathaniel Taylor, dated January 1, 1796, and registered in Carter county, Tenn., in the year 1816, and which said>copy had not been recorded in Lee county, Va., where the land in controversy was originally located, nor in the county of Wise, which has since been formed and where the land now lies; because the said deed not having admitted to record in said Lee or Wise counties, according to law, such deed could not be read in evidence as a recorded deed in Virginia, and as between the parties to said suit was void. The deed aforesaid was not properly recorded in Virginia, for the reason that, in order to its proper admission to record here, it was necessary at that time that it should have been either acknowledged by the grantor before the court, proven before the clerk by three witnesses, or acknowledged before two justices; whereas said deed was not proved by any witnesses, but the delivery attested by two witnesses in Carter county, Tenn., and the handwriting proved by a third. Upon this proof alone was the deed registered in Carter county, Tenn., wherein none of the land was situated, and, upon the certificate of the clerk of Carter county, *843 Tenn., admitted to record in the will book of Scott county, Ya., where none of the land in controversy was situated, contrary to the statutes then in force. 1 Rev. Code Va. 1819, c. 99, §§ 2-7.”
The court below, when the deed alluded to in this assignment of error was admitted in evidence, stated that it was not to be considered as notice to purchasers for value, and that it was admitted as secondary evidence only. Had the full substance of the evidence bearing on the questions raised by the offering of the deed been quoted in the specification of error as required by the rule, it would have shown, as we find from the record, that defendant laid the foundation for introducing secondary evidence by the testimony of a number of witnesses to the effect that diligent search had been made for the original of the deed, in all places where it was likely to be found, without success; that Nathaniel Taylor’s papers, he being the grantee in the deed, were destroyed in 1846, by fire, the presumption being that the original deed was burned at that time; that Taylor’s executors, in 1826, by deed which was admitted in evidence, sold and conveyed to John Crabtree 12,800 acres of the 62,000-acre tract, the same being sold as the land of said decedent, and that Crabtree and his vendees have been in undisputed possession thereof ever since, the heirs of Fields never having made claim to any part of the land sold Crabtree; that Nathaniel Taylor died in Carter county, Tenn., in 1816, in which county and year his will was admitted to record, and at the same time the deed from Fields to Taylor was proven and registered; that by the will the executors were authorized to sell as much of the “back lands” as would be sufficient to pay Taylor’s debts; that while the land in controversy was not in Scott county, Va., where the copy of the deed was recorded, that part of the land conveyed to Taylor by Fields in the deed mentioned was located in that county; that the will book alluded to in the bill of exceptions was a book used by the clerk for general purposes, such as recording deeds, wills, powers of attorney, settlements, and like papers, the office then not being very well provided with record books.
Under these circumstances, was it proper to permit the copy of the deed from the records of. Scott county, Va., to be read in evidence? The deed had been proven in Carter county, Tenn., and duly recorded there, and a certified copy of it recorded in Scott county, where a great-portion of the land mentioned in it was situated. Defendant did not claim that the deed was constructive notice as against a purchaser for valuable consideration without notice, as it was not recorded in the proper county nor within the time required, in order to have that effect. The plaintiff’s contention is, in effect, that a copy of the deed cannot be used as evidence for any purpose, because it was not acknowledged or proven and recorded in the manner required by law, in order to make it constructive notice to third persons. The deed was proven three quarters of a century before this trial, in a court of competent and- extensive jurisdiction, and the presumption of law is that its acts were regular. The certificate, duly attested under the seal of the court, reads as follows:
*844 “May Session, 1816.
“State of Tennessee, Carter County. The within deed was proven in open court and admitted to record. Let it be registered. Given under my hand and the seal of my office this fifteenth day of May, 1816.
“George Williams, Clerk.
“State of Tennessee, Carter County. The within deed of conveyance, with its certificates, was duly registered in the register’s office of said county this fifteenth day of May, 1816. Godfrey Carriger, Reg.
“By His Deputy, Wi. R. Watson.
“A true copy. Teste:
“Benj. Brown, Deputy Register for Carter County, E. T.
“Nov. 11th, 1822.
“State of Tennessee, Carter County. I, John Williams, chairman of the court of common pleas,” etc., “for Carter county, do hereby certify that George Williams, who signed the above certificate as clerk, was then, and still is, the clerk of the court of pleas,” etc., “for Carver county, and that that full faith and credit is due all his attestations as such.
“Given under my hand and seal this 11th day of November, 1822.
“John Williams.
“Elizabeth, Nov. 11, 1822.
“State of Tennessee, Carter County. We, John Williams, William Carter, two of the justices of the peace for Carter county, do hereby certify that Godfrey Carriger, whose name appears as register of Carter county to the annexed copy of a deed of conveyance from Nathaniel Fields to Nathaniel Taylor, was at that time, and for a great many years before had been, and still is, register for Carter county; and that William R. Watson, who signed his name as deputy register to said certificate of registration, was at that time deputy register of Carter county; and that Benjamin Brown, who attests the annexed copy as deputy register, was, at the time of making said attestation, and still is, deputy register for Carter county; and that full faith and credit is due all their acts as such.
“Given under our hands and seals the day above written.
“John Williams. [Seal.]
“W. Carter. [Seal.]
“State of Tennessee, Carter County. I, George Williams, clerk of the court of pleas,” etc., “for Carter county, do hereby certify that John Williams and William Carter, who have made the above certificate, was at that time justices of the peace for Carver county, and that full faith and credit is due all their acts as such.
“Given under my hand and seal this 11th day of November, 1822.
“George Williams, Clerk.
“ Virginia. At a court of quarterly session continued and held for Scott county the 13th day of March, 1823. This power of attorney from Nathan Fields to Nathaniel Taylor, certified to have been proven in the court of pleas and quarterly seesion held in and for Carter county, in the state of Tennessee, is thereupon ordered to be recorded.
“Teste: John S. Martin, D. C.
“Virginia, Scott County—To wit: I, C. M. Carter, clerk of the county court of Scott county, Yirginia, do certify that the foregoing is a true copy of deed from Nathan Fields to Nathaniel Taylor, as the same is recorded in my office.
“Given under my hand this 13th day of October, 1891.
“C. M. Carter, Clerk Scott County Court.”
*845 The act of the Virginia assembly regulating the proving and recording of deeds, passed in 1792, did not require that they should be proven in the courts of Virginia, but permitted it to be done “before any court of law;” and, when so proven and properly certified, they could be recorded in the county where the land was situated in Virginia, if presented for that purpose within a certain time. This deed, though proven, as the record shows, was not presented for record within the time allowed, nor in the proper county, and consequently cannot be used as evidence tending to prove constructive notice to third persons. It was not admitted in evidence for that purpose, nor as a copy of a recorded deed, in the sense such copies are generally used. Where a deed has been lost or destroyed, its contents may be proven by witnesses, and a copy may be used as secondary evidence, even in the absence of certificates showing the proper execution of the original. The deed from Fields to Taylor was proven and recorded in 1816, and it is shown that, whether authorized by law or not, a duly-certified copy was admitted to record in Scott county, Va., in 1823. During the trial of this action in ejectment, in 1891, the original deed, án ancient document, was shown to have been lost; and a copy of the record, so made in 1816 and 1823, was offered in evidence, in connection with other testimony, including a certified copy of the deed and certificates from Carter county, Tenn., and all the other testimony before mentioned, tending to show the loss of the original deed, as an item of proof to be considered for what it was worth. This was proper, under the circumstances of this case, as then shown by the testimony, especially in connection with the questions raised by defendant’s tenth instruction, the giving of which by the court to the jury is assigned as error in the thirtieth specification, yet to be referred to. If there was testimony before the jury from which it could presume an abandonment of the Fields title by his heirs, and if that testimony was such as to justify the presumption that a deed had been made conveying the land to Taylor, then surely it was' proper for this copy to go .to the jury to sustain that presumption by showing that such an original deed had been recorded in Carter county, Tenn., in 1816, where Taylor resided, and also in Scott county, Va., in 1823, where much of the land conveyed was located. The court did not decide as to the weight this testimony tending to show the existence of such a lost deed was to have; that was left to the jury. The admission or rejection of such evidence is to be determined by common-law principles, and the general rules of evidence applicable in such cases, and not by the provisions of legislative enactments intended to regulate the acknowledgment and recording of deeds. Ben v. Peete, 2 Rand. (Va.) 543; Rowletts v. Daniel, 4 Munf. 473; Lee v. Tapscott, 2 Wash. (Va.) 276; Baker v. Preston, Gilmer, 284; French v. Loyal Co., 5 Leigh 680; Archer v. Saddler, 2 Hen. & M. 376; Applegate v. Mining Co., 117 U. S. 255, 6 Sup. Ct. Rep. 742; Stebbins v. Duncan, 108 U. S. 32, 2 Sup. Ct. Rep. 313; Fletcher v. Fuller, 120 U. S. 534, 7 Sup. Ct. Rep. 667.
*846 The next assignment of error relied upon is No. 17:
“The court erred in refusing to give to the jury the fourth instruction asked for by the plaintiffs, which is in the words and figures following, to wit: ‘The court instructs the jury that, although they may believe from the evidence that the land patented to the said Fields, Taylor, and Johnson, or any part thereof embraced in this suit, was forfeited to the literary fund of Virginia by the nonpayment of the taxes for the year 1834, under the act of assembly of Virginia of 1831, and that the land was sold for taxes for the year 1834 at a sale made on the 21st October, 1834, and that a deed was made by the clerk of Lee county, Va., to said J. C. Olinger for said land in December, 1836, yet the court further instructs the jury that if they shall believe from the evidence that the said land was sold for an assessment of tax not exceeding $20, to wit, for the sum of $4.92, and if they shall further believe that the said patent had been granted before the 1st April, 1831, and that the said land was placed or continued on the commissioner’s books on or before the 1st July, 1838, then all said lands so returned delinquent for and before 1st July, 1838, was released from all tax and damages that did not exceed $20 by an act of the general assembly of Virginia of March 19, 1832, and and of February 27, 1835, and said sale and said deed to Olinger passed title to him to only one third of said land. The said tax was remitted by said acts, and the said Field, by said tax sale and deed, was not divested of his title to the said land, or any part thereof.’”
We cannot find in the record that there was any evidence offered tending to show that the land “was forfeited to the literary fund of Virginia for the nonpayment of taxes for the year 1834, under the act of the Virginia assembly of 1831.” The evidence offered by defendant on that question tended to show forfeiture for the nonpayment of taxes for years prior to 1831, and that the land was sold for the failure to pay the taxes for the year 1834. The remaining part of the instruction asked for was not warranted by the testimony, and seems to be based upon a misconception of the acts of the legislature of Virginia of March 19, 1832, and February 27, 1835. The release of the forfeiture for the nonpayment of taxes, provided for in the second section of the act of March 19,1832, applied only to the years prior to 1832, and did not affect the sales directed by the act of March 10, 1832, for failure to pay taxes thereafter accruing. The act of February 27, 1835, by its first section extended the time until July 1, 1836, for the redemption of all land and lots “heretofore” returned delinquent for the nonpayment of taxes, and provided how the redemption might be effected. The second section of that act referred to the fact that many large tracts of land lying west of the Alleghany mountains, granted by the commonwealth before the 1st day of April, 1831, were not then, and had not been for many years, entered on the books of the commissioner of the revenue where they respectively were situated, by reason whereof no forfeiture for the nonpayment qf taxes had occurred, or could occur, under then existing laws; and then provided that the owner of such land should, on or before the 1st day of July, 1836, enter or cause them to be entered on the books of the commissioner of the revenue of the county where such land was located, and have them charged with all the taxes and damages in arrear, and *847 pay the same, unless they were such as would have been relinquished and exonerated by the second section of the act concerning delinquent and forfeited lands, passed March 10, 1832; and then proceeded to provide for the forfeiture of such lands, after the 1st day of July, 1836, should the owners thereof have failed so to enter them, and to have paid the taxes so due thereon. The evidence before the jury was uncontroverted that the land in dispute had been upon the land books for many years prior to the passage of the act of February 27, 1835, and that it had been returned as delinquent for a number of such years. The fact that the land was on the commissioner’s books after it was sold in the year 1834, and before the 1st day of July, 1836, and that it had been returned delinquent before the last-mentioned date, the taxes not exceeding the sum of $20, did not make applicable to the same the provisions releasing the taxes due, contained in the acts of March 19,1832, and February 27, 1835. The first of said mentioned acts provided for the release of the forfeiture for the nonpayment of taxes for the years prior to 1832, and did not affect the taxes thereafter accruing. The act of February 27,1835, did not apply to the case as presented to the jury, as the land was not redeemed, and the provisions relative to entering it on the books of the commissioner of the revenue were not applicable to the land in question, and, as a matter of fact, it had been sold before that act passed. The instruction, as asked for, was uncertain and misleading, mingling together the provisions of the acts of the Virginia assembly alluded to in it, under a misconception of their meaning and intent, and we think the court did right in refusing to give it to the jury. _
_ Assignment of error No. 18 reads as follows:
“The court erred in modifying the plaintiff’s instruction number two, said instruction as tendered to the court being in the words and figures following, to wit: ‘ The court further instructs the jury that, if they shall believe from the evidence that by said patent the said Fields and Taylor and Johnson became seised of the land in controversy, or any part thereof, as set forth in instruction No. 1, and that the said land, or any part thereof, was sold under the delinquent tax law of the state of Virginia for the year 1834; that said sale took place on the 24th October, 1834; that at said sale John 0. Olinger became the purchaser, and the clerk of Lee county, in 1836, made a deed to the said Olinger for same; that the land advertised for sale was sold as and for the land of the said Taylor’s heirs alone, and for the said Taylor’s heirs’ delinquency alone,—then the court instructs the jury that the said tax sale was only a sale of the said Taylor’s one-third interest; that the said Olinger thus became a tenant in common with Fields and Johnson, the other two patentees.’ But the court, instead of giving said instruction as tendered, added the words, ‘ and that said land had not been forfeited to the commonwealth, nor the interest of Fields therein sold to Taylor,’ after the words • No. 1,’ and gave said instruction as thus modified.”
Assignment No. 19 is similar in character, and may, with propriety, be considered with the one just read. It is as follows:
“The court erred in modifying the plaintiffs’ instruction number three, said instruction as tendered to the court being in the words and figures following, *848 to wit: The court instructs the jury that if they shall believe from the evidence that the said Olinger became the purchaser of the said Taylor interest at said tax sale, and received a deed from the clerk conveying him all of the land in controversy, yet the said Olinger being a tenant in common with the said Fields and Johnson, if the said Olinger took possession of said land, or any part thereof, such possession was the joint possession of himself and his cotenants, as the mere possession of one tenant in common will not be taken to be adverse to the title and possession of the others; and if the said Olinger, or those claiming under him, would rely upon an adversary possession, they must not only show an entry, but they must prove an actual ouster of their cotenants, the said Fields and Johnson, or such other notorious act or acts amounting to a total denial of the rights of said eotenants, and must prove that said co-tenants had knowledge and notice of this adverse claim of exclusive ownership on the part of the said Olinger, or those claiming under him; and such adverse possession of the said land must have been continuously, actually, and uninterruptedly by said Olinger, and those claiming under him, under such circumstances, under color of title for the length of time prescribed by law, before said possession will ripen into a good and sufficient title to enable the defendants in their suit to defeat the plaintiffs’ right to recover.’ But the court, instead of giving said instruction as tendered, inserted the words, ‘ and that Fields’ interest in said land had not been forfeited to the commonwealth, nor sold to Taylor,’ after the words ‘tax sale,’ in the third line of said instruction, and gave said instruction as thus modified.”
Plaintiffs in error insist that the insertion by the court of the words indicated, in the instructions mentioned, raised questions which were foreign to the propositions of law intended to be propounded by them, confusing in their tendencies, and that it was error so to modify the instructions, We fail to see that the changes made by the court produce the result claimed, and we do not think that the instructions as given are subject to the criticism made. The instructions as tendered evidently did not fairly present the law applicable to the case as it was presented to the jury by the testimony before it. They would have tended to confuse the minds of the jurors had they been given without the changes made by the court. The matter of the forfeiture of the title to the commonwealth, as well as that relating to the alleged sale of Fields’ interest to Taylor, were properly called to the attention and submitted to the determination of the jury, in connection with the question of cotenancy. If the title to the land had been vested in the “Literary Fund” by ¡forfeiture, then Olinger, by his purchase, under the act of 1832, if the sale was properly made thereunder, acquired the entire tract of land, subject to the payment of taxes in arrear. If Fields had sold his interest in the land to Taylor in 1796, as claimed by the defendant, and the tax sale was for the delinquency of Taylor’s heirs, then (independently of the question of forfeiture) Olinger, by virtue of his purchase, secured the interest of Fields as well as of Taylor.
The twentieth assignment is as follows:
“The court erred in modifying the plaintiffs’ instruction number five, said instruction, as tendered to the court, being in the words and figures following, to wit: ‘ The court instructs the jury that the forfeiture of the land in controversy to the commonwealth of Virginia is a question for the jury to *849 determine, and, in arriving at their determination, they will take into consideration the certificates of the auditor of public accounts along with the certified extracts from the land books from the county of Lee, and the certified record from the circuit superior court of law and chancery for the county of Lee, and all the other facts and circumstances of the case; and they will determine, in the first place, whether the said lands, to the extent of said Fields’ interest, was forfeited to the commonwealth at the date of the institution of this suit, and, if so forfeited at any time, they will then ascertain whether said forfeiture was remitted or otherwise relinquished by said commonwealth ; and the court instructs the jury that a forfeiture is never favored or implied; and in ascertaining the said question of forfeiture the court instructs the jury that the burden of proof is upon the defendants to prove said forfeiture.’ But the court, instead of giving said instruction as tendered, struck out the words, ‘ and all the other facts and circumstances of the case,’ and gave said instruction as thus modified. ”
After a careful examination of the record, we are unable to find therein any facts and circumstances of the case pertinent to the question of forfeiture, other than those mentioned in the instruction given by the court. As a matter of course, the “facts and circumstances” alluded to in the instruction, as presented to the court, must have been those bearing on the question covered by it, and as they were all embraced in the instruction, as given, the words were properly stricken out. Had there been any “other facts and circumstances” proper for the consideration of the jury, on the question of forfeiture, counsel for plaintiffs in error would have been able, either in specification, brief, or argument, to have directed our attention to them. The trial judge should not confuse or mislead the jury by referring in his instructions to “facts and circumstances,” of which in fact no competent evidence has been offered.
The twenty-second error assigned reads:
“The court erred in giving to the jury defendant’s instruction number two, said instruction being in the words and figures following, to wit: ‘ The court instructs the jury that if they believe from the evidence that Nathan Fields sold the land in controversy to Nathaniel Taylor in 1796, they must find for the defendant, unless they believe from the evidence that the said plaintiffs are purchasers for value, without notice of said sale; and the court further instructs the jury that a man cannot, under the law, protect himself as an innocent purchaser, if at the time he made the purchase the land was in the open and notorious possession of others than his vendors; and the court further instructs the jury that the form of the deed from J. Wyman Fields to the plaintiff purports only to convey such land as Nathan Fields died possessed of, and left indefinite the subject-matter of the deed, and this should have put them upon their inquiry as to the possession and condition thereof in regard to adverse occupancy and claim; and, if the jury further believe that reasonably diligent inquiry on their part would have shown them that the defendant was in possession of the land under a claim of right, they cannot find that plaintiffs are purchasers for value without notice.’ ”
If at the date of the deed purporting to convey the interest of the heirs of Nathan Fields in the land in controversy to the plaintiffs, April 30, 1888, other persons than those who conveyed to the plaintiffs were in the open and notorious possession of the land, that of itself was sufficient *850 to put the plaintiffs upon inquiry, and it was their duty to ascertain the character of the title of those who so held the possession. The plaintiffs will be considered as fully informed of those matters which they could have discovered had they discharged that duty. This rule is stated in Minor’s Institutes (volume 2, pp. 889, 890) in these words:
“The instances of constructive notice are referable to several classes, all depending on the general consideration that sound public policy requires the presumption that he was aware, or, at least, that he should be treated as if he were aware, of the existence of the prior conveyance or charge. They are as follows: (4) Where the adverse claimant is in the actual adverse possession and occupancy of the land when the subsequent purchaser buys.”
The supreme court of the United States, in Lea v. Copper Co., 21 How. 493, 498, says:
“But it is insisted that the deed from Lea to Davis was not registered, and fraudulently concealed from the complainant, so that he could not proceed to assert his rights. Davis had possessioij of the land when he took William Park Lea’s deed, claiming for himself, and adversely to all others: and he so continued in possession till he sold the land, in December, 1852. This adverse possession was in itself notice that he held the land under a title, the character of which the complainant was bound to ascertain. Landis v. Brant, 10 How. 375.”
The same court, in Hughes v. U. S., 4 Wall. 232, said:
“The patentee cannot complain of the proceeding, for the open, notorious, and exclusive possession of the premises by the parties claiming under Goodloe, when the patentee made his entry and received the patent, was sufficient to put him upon inquiry as to the interests, legal or equitable, held by them; and, if he neglected to make the inquiry, he is not entitled to any greater consideration than if he had made it, and ascertained the actual facts of the case.”
On this question, see Cordova v. Hood, 17 Wall. 1; Long v. Weller's Ex’r, 29 Grat. 347; Wood v. Krebbs, 30 Grat. 708; Iron Co. v. Trout, 83 Va. 419, 2 S. E. Rep. 713.
With great force should this principle apply in this case, not only for the general reasons as mentioned, but also because of the language used in the deed to plaintiffs. The deed says:
“Whereas, Nathan Fields, at the time of his death, was seised and possessed of large bodies and tracts of land in the counties of Lee and Scott, in the state of Virginia, being the same which was granted by the commonwealth: * * * Now, therefore, this deed witnesseth * * * that * * * do grant unto the said parties of the second part all of the said lands to which they, the said parties of the first part, are entitled in law or equity. ”
The land was not described with the usual particularity, and the general terms used were sufficient of themselves to have put the plaintiffs on inquiry. The instruction, in connection with the evidence before the jury, was proper.
Assignment No. 23, on the question of forfeiture, is, in effect, disposed of with No. 20, before alluded to. The matter was left to the jury for its finding. The 3334th section of the Code of Virginia expressly provides that the auditor’s certificates shall be prima facie proof of the facts stated *851 in them. This was not as clearly stated in the instruction as it might have been, but that was not to the prejudice of the plaintiffs, and they will not be permitted to complain of it now.
Plaintiffs in error insist that the state of Virginia had not the right to forfeit to its own use the lands situated within that state, and owned by citizens of that and other states, and that the state of Virginia could not vest title to such lands in itself, without some antecedent procedure which would be equivalent to a judicial ascertainment of the facts which are made the occasion of the forleiture. The supreme court of Virginia has, in a number of cases, virtually disposed of this question, and the decisions of that court relative to the “forfeiture acts,” passed by the legislature of that state, will be accepted as conclusive of that point by this court. See the cases of Wilds Lessees v. Serpell, 10 Grat. 405; Staats v. Board, Id. 400; Hale v. Branscum, Id. 418.
The questions raised by assignments of error numbered 24, 26, and 29 may properly be considered together. The specifications are as follows:
“Twenty-Four. The court erred in giving to the jury defendant’s instruction number four, the said instruction beimi in the words and figures following, to wit: ‘ The court instructs the jury that although Fields, Taylor, and Johnson, the patentees of the 62,000-acre tract of land, or their heirs, may have been the owners of the same in 1834, as joint tenants or tenants in common, yet if they believe that said tract of land was listed upon the land books of Lee county for the purpose of taxation in that year in the name of Taylor’s heirs, and was sold for the nonpayment of the taxes thereon, and purchased by said Olinger at such sale, and conveyed to him by metes and bounds by the clerk of the county court of Lee county, said Olinger’sdeed gave a color of title and of possession thereunder by said Olinger, the purchaser, claiming title to the whole premises, it amounted to an actual ouster and disseisin of the said Fields and Johnson, or their heirs, and such possession was adverse; and if the said Olinger, and those who claim under him, continued in such possession uninterruptedly for the length of time prescribed bylaw prior to the bringing of this suit, it will bar the plaintiffs’ right to recover, and the jury should find for the defendant.’ ”
“Twenty-Sixth. The court erred in giving to the jury defendant’s instruction number six, said instruction being in the words and figures following, to wit: ‘The court instructs the jury that if they believe from the evidence that John C. Olinger purchased at a tax sale a 48,200-acre tract of land, which is the land in controversy, listed on tiie land books of Lee county in the name of Taylor’s heirs for taxation, and sold for the nonpayment of taxes; that lie received a deed therefor, by metes and bounds, from Alexander W. Mills, the clerk of the county court of said county; that he recorded the said deed in the clerk’s office of said county; that he entered into possession thereof under said conveyance; that he placed the same upon the land books of said county in his own name, for the purpose of taxation; that he, and those who hold under him, have paid the taxes regularly thereon from the time of the said conveyance; that he, and those who hold under him, have made improvements thereon and profits therefrom, without offering to account to the plaintiffs or those under whom they claim; that he, and those who hold under him, have made leases of portions of said land, in his own or their names, and placed the lessees in the possession of the leased premises; that he, and *852 those who hold under him, have sold and conveyed portions of said land, and placed the purchasers thereof in possession, and appropriated the proceeds of such leases and sales to his own or their own use, without accounting to the plaintiffs, or those under whom they claim, for any part thereof,—then the jury have the right to presume, although the said John C. Olinger only purchased the interest of the Taylor’s heirs in said 62,000-acre tract of land, that there was an ouster of the cotenants of Taylor’s heirs, and that his possession, and the possession of those under him, was adversary; and that, if such adversary possession was continuous and uninterrupted for more than the length of time prescribed by law prior to the bringing of this suit, then the plaintiffs have no right to recover in this action, and the jury must find for the defendant.’ ”
“Twenty-Ninth. The court erred in giving to the jury defendant’s instruction number nine, said instruction being in the words and figures following,, to wit: ‘The court instructs the jury that if they believe from the evidence that John 0. Olinger, after the date of the deed from Mills, clerk, to him, took actual possession of any part of the land embraced in the said deed, claiming the whole of said land as his own, and excluded the Fields heirs therefrom, such act was an ouster of the Fields heirs as tenants in common, and such possession by said Olinger was adverse to said Fields heirs from the time of such entry.’ ”
The plaintiffs in error insist that the deed made to Olinger, under the circumstances detailed in assignment 24, did not constitute color of title under which he could claim the entire tract.of land described in said deed, and that his possession under it could not be adverse to Fields’ heirs. They claim that Fields had not sold his interest to Taylor, and that only the interest of Taylor’s heirs was sold at the tax sale, and that only that interest should have been conveyed by Mills, the clerk, to Olinger, and that, if more was conveyed, only title to that interest passed to Olinger. The defendant, relying upon the alleged deed of 1796, claims that Fields had sold his interest in the land to Taylor, and that at the date of the tax sale Taylor’s heirs owned the Fields interest. It must be admitted that, by the act of March 10, 1832, under which it is claimed that the land was sold in the name of Taylor’s heirs, Olinger, by the deed made to him by Mills, acquired a legal title to such interest only as Taylor’s heirs had in the land at the time of the sale. It was for the jury to find what that interest was. Was it the interest held by Taylor, as one of the patentees, or did it also include the Fields interest, as claimed by the defendant? This was one of the principal questions of fact to be found by the jury, and it was proper that the law applicable to either finding should be given to them. Again, if the deed to Olinger conveyed to him all the land that was on the books in the name of Taylor’s heirs, and that was all of the tract originally patented to Fields, Taylor, and Johnson, not theretofore sold, and if it was in the deed described by metes and bounds, and Olinger entered into the possession thereof claiming title to all, and exercised acts of ownership over it in the manner set forth "in the instructions, then the deed was color of title; and if he had possession under it, and claimed adversely to all others continuously for the period of time prescribed by law, then the plaintiffs in this suit could not recover. ■
*853 What is color of title? It is matter of law, and, when the facts are shown, it is for the court to determine whether they amount to color of title. In the case of Wright v. Mattison, 18 How. 56, the supreme court, through Mr. Justice Daniel, said:
“The courts have concurred, it is believed without an exception, in defining color of title ’ to be that which in appearance is title, but which in reality is no title. ”
In Veal v. Robinson, 70 Ga. 809, it said:
, “Color of title is anything in writing purporting to convey title to the land which defines the extent of the claim, it being immaterial how defective or imperfect the writing may be, so that it is a sign, semblance, or color of title.”
In Hutchinson’s Land Titles (page 215, § 390) it is defined as follows:
“It embraces not only a claim of title, but presents the appearance of a real deduction of title from some source, however insufficient or irregular; and the value to the disseisor, entering upon land under color of title, of the paper purporting to pass the title, is that, while he may not have the actual occupancy of more than a small parcel of the tract or lot of land, in construction of law he is, by virtue of his paper giving color of title, entitled to claim to be in the adverse possession, not only of the parcel actually occupied, cultivated, or inclosed, but of the whole area included in the description of his title. Hamilton v. Wright, 30 Iowa, 480; Taylor v. Buckner, 2 A. K. Marsh. 18,” 12 Amer. Dec. 354.
We think it is clear that the deed to Olinger gave him color of title to all the land described in it. The court properly so advised the jury, and submitted to it all questions of fact relating to his possession under his color of title. Fields’ heirs and Taylor’s heirs might have been tenants in common of the land at the date of the tax sale in 1834, and Olinger only have purchased the interest of Taylor’s heirs; yet if he entered into the possession thereof under the deed, claiming title to all, as set forth in the instructions, it was proper for the jury to determine whether such possession was adverse to his cotenants, and an ouster of all others, and in this particular the instructions fairly state the law. Buchanan v. King, 22 Grat. 422; Town v. Needham, 3 Paige, 545, 24 Amer. Dec. 248; Culler v. Motzer, 13 Serg. & R. 356, 15 Amer. Dec. 604; Bradstreet v. Huntington, 5 Pet. 444; 1 Washb. Real Prop. (4th Ed.) 657.
Next in order is the twenty-fifth assignment, in the following words:
“The court erred in giving to the jury defendant’s instruction number five, said instruction being as follows, to wit: ' The court instructs the jury that it is not necessary, when a man enters upon the land under a deed purporting to convey to him a certain boundary, that he should fence or cultivate the entire tract in order to give him adverse possession. It is enough, in such case, if he actually occupies a portion of the tract; the law extends his adverse possession to the boundaries.’ ”
It is claimed that the court erred in giving this instruction, the plaintiffs in error insisting that in cases like this, where the land in controversy is of that class known as “wild lands,” that the rule set forth in the instruction does not apply, and that the possession of the occupant *854 is restricted to his actual improvement. We think that there is a misconception of the authorities relied upon by plaintiffs in error, as well as a misuse of the words referred to. The words “wild land,” as used in the authorities cited, refer to large tracts of unoccupied lands, as to which no one has been or is in the actual possession of, or of any part thereof. The moment any one, under claim or color of title, takes actual possession of any part of such land, it ceases to be “wild land,” as described in the cases to which our attention has been called. As was appropriately said by counsel for defendant in error, “to say that the possession of ‘wild lands’ is confined to ‘actual occupancy’ is a contradiction in terms.” The plaintiffs cite Taylor’s Devisees v. Burnsides, 1 Grat. 165, but, as we understand that case, it does not support their position. True, the court (page 198) said:
“It follows from what has been said that wild and uncultivated lands cannot be made the subjects of adversary possession while they remain completely in a state of nature. ”
We must read the entire opinion to fully understand the meaning of this sentence, and it is then apparent that, by “completely in a state of nature,” the court alluded to land upon which no one resided, where-there was no improvement upon .any part, and no cultivation of any portion of it. In that case the court also said:
“A change in their condition, to some extent, is therefore essential, and the acts by which it is effected are often the strongest evidence of actual possession. Without such change accomplished or in progress there can be no residence, cultivation, or improvement; no occupation, use, or employment. Evidence short of this may prove an adversary claim, but, in the nature of things, cannot establish an adversary possession. * * * In controversies concerning wild and uncultivated lands, the usual marks of actual possession are concurrent improvement, cultivation, and residence; the two former, of course, at least in the earlier stages of the prescriptive period, to a very limited extent. But the degree is immaterial if the acts be real and bona fide, more or less is unimportant, if there be enough to indicate apparent ownership; and the actual possession thus gained, if exclusive, extends throughout the borders of the colorable title, whether those be large or small.”
In Ellicott v. Pearl, 10 Pet. 432, Mr. Justice Story, delivering the opinion of the court, said:
“The argument in support of the instruction as prayed assumes that there can be no possession to defeat an adverse title except in one or other of these ways, that is, by an actual residence or an actual inclosure,—a doctrine wholly irreconcilable with principle and authority. Nothing can be more clear than that a fence is not indispensable to constitute possession of a tract of land. The erection of a fence is nothing more than an act presumptive of an intention to assert an ownership and possession over the property. But there are many other acts which are equally evidence of such an intention of asserting such ownership and possession; such as entering upon land and making improvements thereon, raising a crop of corn, felling and selling the trees thereon, etc., under color of title. An entry into possession of a tract of land, Under a deed containing specific metes and bounds, gives a constructive possession of the whole tract, if not in any adverse possession. Although *855 there may be no fence or inclosure round the ambit of the tract, and an actual residence only on a part of it, to constitute actual possession, it is not necessary that there should be any fence or inclosure of the land. If authority were necessary for so plain a proposition, it will be found in the ease of Moss v. Scott, 2 Dana, 275, where the court say that ’ it is well settled that there may be a possession in fact of land not actually inclosed by the possessor/ * * * In short, his entry being under color of title by deed, his possession is deemed to extend to the bounds of that deed, although his actual settlement and improvements were on a small parcel only of the tract. In such ft ease, where there is no adverse possession, the law construes the entry to be coextensive with the grant to the party, upon the ground that it is his clear intention to assert such possession. ”
The law applicable to the facts which defendant’s testimony tended to establish was properly set forth in this instruction. We cannot find in all the record any testimony tending to show that the plaintiffs, or those under whom they claim, were at any time alter the date of the deed to Olinger in 1836, and before the institution of this suit in 1890, in the actual possession of any part of the land. Had there been any such testimony plaintiffs would have cited it, and would have asked the court below to instruct the jury as to the effect of any fact to be found from it. We are of the opinion that the instruction was properly given.
Assignment of error No. 28 reads:
“The court erred in giving to the jury defendant’s instruction number eight, to wit: ‘The court further instructs the jury that, in order to bring notice of the adverse holding of one tenant in common to his eotenant, it is not necessary to give him actual notice; but if the hostile character of the possession is so openly manifested that his observation as a man reasonably careful of his interest would be sufficient to discover it he would be deemed to have notice.’ ”
We find no error in this instruction. It is sustained by principle, and by the authorities we have hereinbefore alluded to, and has been disposed of with specification No. 19.
Assignment No. 30 is as follows:
“The court erred in giving to the jury defendant’s instruction number ten, to wit: ‘ The court instructs the jury that there is evidence in the case from which the jury may find that Nathan Fields did sell his interest in the lands in suit to Nathaniel Taylor. There is testimony tending to show the execution of a deed, dated January 1, 1796, from Fields to Taylor, the subsequent listing of the land in the name of Nathaniel Taylor or his heirs, sales of considerable portions of these lands by Taylor and his heirs, and the unchallenged possession by their vendees. These facts, with the failure of those claiming under Nathan Fields, for nearly a century, to assert title, justify the jury in finding that Nathan Fields parted with his interest in these lands in his lifetime/ ”
The plaintiffs in error filed in the court below the affidavits of two members of the jury, with their motion for a new trial, the object of which was to prove that the jury was misled by this instruction. Such evidence is not proper for the purpose of impeaching the verdict of the jury, and in this case, after the trial judge had overruled the motion, the affidavits were not made part of the bill of exceptions taken by *856 plaintiffs, and are not, therefore, before us, although counsel have alluded to them during the argument. The main contention, so far as this instruction is concerned, is that the court, by giving it, invaded the province of the jury. We do not think so, for no rule of law applicable to the courts of the United States is violated by it. The law is correctly stated, and all matters of fact were submitted to the final determination of the jury. In Rucker v. Wheeler, 127 U. S. 85, 8 Sup. Ct. Rep. 1142, the supreme court, Mr. Justice Harlan delivering the opinion, said:
“It is no longer an open question that a judge of a court of the United States, in submitting a case to a jury, may, in his discretion, express his opinion upon the facts; and that when no rule of law is incorrectly stated, and all matters of fact are ultimately submitted to the determination of the jury, such expressions of opinion are not reviewable on writs of error.” Railroad Co. v. Putnam, 118 U. S: 545, 553, 7 Sup. Ct. Rep. 1; Railroad Co. v. Vickers, 122 U. S. 360, 7 Sup. Ct. Rep. 1216; U. 3. v. Railroad Co., 123 U. S. 113, 8 Sup. Ct. Rep. 77.
In Fletcher v. Fuller, 120 U. S. 534-550, 7 Sup. Ct. Rep. 667, in which case the questions involved in this instruction relating to the legal presumptions as to the execution of deeds to be drawn from the actual, open, and exclusive possession of land for the period prescribed by the statute of limitations were fully considered, Mr. Justice Field, speaking for the court, said:
“When, therefore, possession and use are long continued, they create a presumption of lawful origin; that is, that they are founded upon such instruments and proceedings as in law would pass the right to the possession and use of the property. * * * We will add, moreover, that though a presumption of a deed is one that may be rebutted by proof of facts inconsistent with its supposed existence, yet where no such facts are shown,'and the things done, and the things omitted, with regard to the property in controversy, by the respective parties, for long periods of time after the execution of the supposed conveyance, can be explained satisfactorily only upon the hypothesis of its existence, then the jury may be instructed that it is their duty to presume such a conveyance, and thus quiet the possession.”
There was evidence before the jury which tended to prove that Fields sold his interest in the land in controversy in 1796, and there was no evidence that he was ever in possession of any part of the land since that year, or that he ever paid any of the taxes on it. There was evidence tending to prove that the party to whom Fields is said to have sold his interest exercised acts of ownership over the land, and that his executors sold part of it in 1826, their vendee taking and retaining exclusive and continued possession. There was evidence tending to prove —indeed, there was no contradictory evidence—that Olinger, since he purchased the land in 1834, (and defendant claims under him,) and his vendees, have paid all taxes due on the land from that date to the institution of this suit; and that they have been in the actual, adverse possession of the land continuously from 1836 to the time of the trial, under color of title. With this evidence before the jury, together with *857 much other of similar import, as appears by the record, it would have been gross error for the court to have refused to give this instruction.
The next and last error assigned, not abandoned, is the thirty-first, to wit:
“The court erred in giving to the jury defendant’s instruction number eleven, to wit: ‘ The court instructs the jury that the length of time necessary to bar a right of entry on an action for land between the year 1834 and the year 1850 was twenty-five years; that from the year 1850 to the year 1861 the length of time necessary was fifteen years; and that since the year 1861 the length of time necessary has been ten years, from which last period, however, the time of any possession existing between the 17th day of April, 1861, and the 1st day of January, 1869, must be excluded.’ ”
We think this instruction in strict accordance with the statutes of Virginia relating to this question. There was no evidence before the jury rendering it inapplicable, as claimed by plaintiffs in error, and the court very properly gave it.
We have now considered and passed upon all the specifications of error not abandoned by the plaintiffs in error, and we find no error in the record; therefore the judgment is affirmed, with costs.