## ADVERSE POSSESSION AS BETWEEN CO-TENANTS.

Common Pleas Court of Cuyahoga County.

DAVID D. McCREARY v. W. H. McCREARY ET AL.

Decided, May 4, 1911.

*Title—As Between Co-Tenants, Where One Co-Tenant and His Descendants Had Been in Possession for Fifty Years—Effect of a Contract by a Co-Tenant to Sell to Another Co-Tenant—Adverse Possession as Between Co-Tenants—Possession Under Defective Court Proceedings.*

1. A defective deed, by order of court in the completion of a land contract between co-tenants, gives color of title, and, followed by an exclusive possession, is sufficient to show an adverse holding,

2. Adverse possession is dependent on a claim of exclusive ownership by the one in possession rather than acquiescence in such claim by the one excluded; and where, as in this case, the plaintiff has lived near the premises occupied exclusively for more than forty years, twenty-six years of which time have been since his majority, and during all of this time he has made threats of suit to contest defendant's exclusive right to the property after his uncle's death, and during all of the time defendants have claimed exclusive ownership by reason of purchase from claimant's ancestor, and have urged him to bring suit within the lifetime of those knowing the facts, the proof of title by adverse possession is clearly made out, and the right of partition by such claimant is defeated.

BABCOCK, J.

Plaintiff seeks partition of sixty-one acres of land situated in Brecksville township, in this county, and claims that he is the owner of one-half of the premises, being the sole heir of William McCreary; and he alleges that the defendants are the owners of the other one-half as tenants in common with him, all of the parties being the children of David H. McCreary and William McCreary, who became owners as tenants in common of the farm about 1861, through the devise of the same to them by their father, David McCreary.

The defendants interpose the following defense: that their father, David H. McCreary, purchased of plaintiff's father, Will-

iam McCreary, his one-half interest soon after their father's death, by a land contract, which was not completed in the lifetime of William McCreary, who died in February, 1864; but they say that David McCreary, in his lifetime, paid all of the purchase money agreed upon, with the exception of the sum of about $150, and agreed to perform the obligations which were secured by the terms of the will, in the nature of a lien upon the premises, to support for the remainder of her life their sister, Mrs. Orson Peck, and her children, as long as she remained a widow. And they say that William died resident of Summit county, and that the probate court of said county issued letters of administration to one Peter Dillow, and that Dillow, as administrator, brought an action in the Probate Court of Summit County, setting forth that the debts of said decedent, William McCreary, exceeded the personal property, and that it was necessary to sell the land of the decedent to pay his debts, and that this land embraced his land both in Summit and Cuyahoga counties; and he prayed that the widow and this plaintiff, then an infant, be made parties defendant and notified of the pendency of the action, and that the interest of the decedent in the lands described be determined, and the plaintiff be ordered to sell the premises. That David H. McCreary answered said petition, setting forth that about March 15, 1863, he and the decedent had entered into a contract for the purchase and sale of decedent's one-half interest in common in the Cuyahoga county land, being said sixty-one acres; that the contract had been performed, except as to the payment by him of $150. That the decedent had no interest in the land other than the amount still due him under the contract; and he prayed that, on payment of the balance due, the administrator be authorized to execute and deliver to him, on behalf of the heirs at law, a deed in fee simple of the interest of William McCreary in said Cuyahoga county lands. He says that in December, 1864, the Probate Court of Summit County entered an order; and the administrator, on the 21st of February, 1865, made a deed, in pursuance thereof, to David H. McCreary, reciting the proceedings and the order of the court; and that the deed was afterwards recorded in Cuyahoga county records of deeds.

The defendant also claims title by adverse possession of the premises, and asks that the petition be dismissed.

By way of reply, the plaintiff denies the allegations of these defenses, and thereby the burden is cast upon the plaintiff to prove one of them. Plaintiff does not controvert the existence of the probate record of Summit county, but claims that it is without binding force for want of jurisdiction in the court to entertain and adjudicate upon the matters in issue.

On the question of adverse possession, the court finds the facts to be substantially as follows: that David and William McCreary became vested in 1861, by their father's will, of the title to sixty-one acres of land in Brecksville township which is in controversy in this action; that they held it as tenants in common, subject to the obligation to care for their sister, Mrs. Orson Peck, and her children, as long as she remained a widow; that William died in 1863, leaving this plaintiff his sole heir; and in the following year William's administrator, Peter Dillow, brought suit in the Probate Court of Summit County to sell lands; and that the proceeding was carried on, and, in pursuance of the order entered therein, a deed was made in all respects as set forth by the defendants in their answer, and that the deed was recorded soon thereafter in Cuyahoga county records.

That David McCreary was then occupying the said sixty-one acres, it being the home farm of the family; and that he was in the occupation and cultivation of the same, either carrying on the farm work in person or by tenants, down to his death, which occurred about five years ago, since which time his children, the defendants herein, have been in the occupation and control of the same.

At the time of sale under order of the Probate Court of Summit County, the plaintiff was an infant a little more than one year of age. He lived with his widowed mother until he was grown and nearly of age, at which time he married. The first fourteen or fifteen years of his life he and his mother lived in the northern part of Summit county near Brecksville; and when he was about fifteen years of age he moved with his mother to the city of Cleveland, where he has continued to live up to the

present time, he being now of the age of 48 years.   While living in Cleveland it has been his habit to visit, perhaps yearly, his uncle and his family in Brecksville, who are residing upon the farm in controversy.   Nearly thirty years ago, when he was about twenty years of age, he went with a lawyer in Cleveland, by the name of Roskopf, to look over the farm and ascertain its condition and boundaries; and at that time, in company with his cousin, a minor son of his uncle David, they went over the farm, and he, as best he could, pointed out its boundaries and general situation.   A few days thereafter his uncle, David McCreary, received from this lawyer the following letter:

"CLEVELAND, O., May 13, 1882.

"MR. DAVID MCCREARY, Brecksville, O.

"Dear Sir:   Will you please make it convenient to see me as soon as possible with reference to the arrangement and adjustment of the claim of David McCreary, your nephew, to his father's interest to the estate of his grandfather under the will. As this is a family affair, I would request that you bring your good wife with you, and that this matter be conducted in a friendly spirit.   I would suggest that you meet me at the house of Mrs. Smith, No. 198 Broadway, on next Wednesday, May 17. Let me hear in reply to this.   Address to 198 Broadway.

"Respectfully yours,

"C. J. ROSKOPF,

"Attorney at Law."

The Mrs. Smith referred to was the mother-in-law of the plaintiff, at whose house, referred to in the letter, the plaintiff was residing.   Nothing was done in response to this request, and no meeting took place.

The plaintiff testifies—

"I always thought I had some interest in the farm, but I did not know what.   Four years ago I was told I had some interest. I was out there to play ball, and was told half of this land was mine.   I then went to Mr. Hart, my attorney, to look it up for me.   I then learned from him the nature of my claim."

Lewis Fitzwater and Mrs. W. H. McCreary testified to conversations with the plaintiff, which he admits as having taken place.   And as to the essential matters narrated therein, as far

as I can see, there is no controversy between them.   Lewis Fitzwater says:

"I talked with the plaintiff about ten years ago.   I asked him why he didn't begin, while the folks who knew the facts were living.   He said he would wait until Uncle died, and then he would try and get what was coming to him."

Mrs. W. H. McCreary says—

"I have known plaintiff during my entire married life of twenty-five years.   I lived in the village of Brecksville.   I have seen plaintiff come out to the farm yearly, I should think, during these years.   About ten years ago I was at the plaintiff's house, and he said, 'As soon as Uncle Dib dies, I will make them all come down a-peg or two.' "

This talk was about ten years ago.

About 1877 the plaintiff's mother brought an action in this court to have her dower in this property set off.   She claimed as the widow of William, the co-tenant of David, and owner of one-half of the property.   David answered in that suit, setting forth that he had purchased by contract of William, had paid for the land, and was the sole owner thereof, and that he had received a deed for the same from the administrator of William, deceased, by order of the Probate Court of Summit County, and that the deed was recorded in this county.   The deed was made "subject, however, to the dower interest of Nancy McCreary, widow of said William McCreary, *in the fifteen acre tract.*" Whether the deed was made subject to her dower or not, is very doubtful; in fact I am of opinion that it was not so made.   But this court found her entitled to dower, and found William McCreary, her husband, to be seized of a one-half interest in the property.

It further appears that for the last forty or fifty years the property has been upon the tax duplicate in the name of David H. McCreary, and that he and his children have paid the taxes for all these years, running from thirty to sixty dollars a year.

It further appears that the defendant has improved the property to the extent of building a horse barn upon the premises, several hundred dollars in value.

These are substantially the uncontroverted facts in the case; and it remains only to apply the law to them and to such reasonable inferences as arise from them.

On the previous trial of this case, this court held the title of the defendants good through the probate proceeding in Summit county. The circuit court reversed the judgment for the defendants, saying in their opinion the following:

"We find ourselves unable to agree with the conclusion of the learned judge of the court of common pleas, that the Probate Court of Summit County had further jurisdiction of the subject-matter of the present litigation. The only relief which the probate court could properly award, in an action to sell decedent's land, to the defendants, is distinctly and exclusively expressed in the statutes then covering such proceedings. It could not decree the specific performance of the decedent's contract to sell such lands, because that form of relief is not contemplated by the statute. That such a contract was then subsisting is no doubt *res adjudicata*, for the probate court was obliged to pass upon that jurisdictional fact. The alleged fulfillment of the contract and the defense of the statute of limitations will be proper matters of consideration upon a retrial of this cause. For error in dismissing the petition of the plaintiff below, the judgment is reversed and the cause remanded."

If the question were before me on first impression, I should be inclined to doubt the correctness of the holding of the circuit court; but it is for me to follow its direction, and determine—to use its language—"the alleged fulfillment of the contract, and the defense of the statute of limitations." The only evidence as to the fulfillment of the contract is the certified copy of the record of the proceedings in Summit county. The circuit court held that the probate court had jurisdiction to pass upon the fact that a contract of sale from William to David McCreary did in fact exist; and that that court found such contract to exist; and this finding imports verity. It is therefore proved that a contract of sale from William to David did in fact exist as claimed by the defendants.

The record also discloses that the probate court found that David paid to the administrator the balance of the purchase price, and it discloses that the court ordered him to make a deed.

As to these subsequent matters, the finding does not import verity if beyond the court's jurisdiction. The court is uncertain as to the exact line of demarkation in this proceeding where jurisdiction terminated, but concludes that the record imports verity no further than the finding that there was a contract existing, and possibly the terms thereof. To hold that the court had power to order the payment of the balance of the purchase price, but had no power to direct the making of the deed, seems to me untenable. I therefore conclude that there is no proof before the court, according to the opinion of the circuit court in this case, which would justify this court in finding that David did pay the balance of the purchase price to Dillow, the administrator.

It remains, then, to consider whether a contract of sale by one tenant to his co-tenant is enough to defeat partition of the premises on the part of the one thus contracting to sell.

The other question in the case is, whether under these facts adverse possession sufficiently long to bar plaintiff's cause of action is shown to exist.

Taking up these questions in the reverse order of their presentation, I find the following to be a reasonable statement of the law:

"It is well settled that one tenant in common may hold adversely to his co-tenant; and if his possession is continued uninterruptedly for the statutory period, he will acquire an undisputed title; and this is true whether the original entry was with intent to hold adversely, or whether the entry was as a tenant in common.

"In order to constitute a disseizin of a co-tenant, the fact of adverse holding must be brought home to him, either by information to that effect given by the tenant in common asserting the adverse right, or there must be outward acts of exclusive ownership of such a nature as to give notice to the co-tenant that an adverse possession and disseizin are intended to be asserted. Actual, verbal or written notice is not, however, necessary; adverse possession may be inferred from outward acts, upon a notorious claim of ownership, and exercise of exclusive right.

"It has also been held that it is not absolutely essential that the co-tenant should have actual knowledge. A tenant in common will be deemed to have notice of the adverse holding by his

co-tenant where the hostile character of the possession is so open and manifest that a man of reasonable diligence would have discovered it.''   1 Cyc, 1072, 1073.

''Statutes of limitation are statutes of repose, and should be fairly and honestly executed. They are for the peace of society. Indeed the well-being of society demands their faithful execution. The getting up of latent claims, to the disturbance of possession of long standing, if encouraged, would be an intolerable mischief to any community.   Adverse possession may be of one tenant in common against his co-tenant, as well as when no co-tenant exists.   It is true, as a general rule, that the possession of one joint tenant or tenant in common is the possession of the other; and that a mere failure to account for the proceeds by the tenant in actual possession does not amount to an ouster; but there need be no actual turning out.   A refusal of' one joint tenant or tenant in common to let his co-tenant come in or to participate in the enjoyment of the common property is equivalent to turning him out.   It is a question of intent by the actual occupant, and this intention may appear as well by actions as by words.   It requires no special or verbal notice, but may be inferred by outward acts.   Open and notorious claim of ownership and exercise of exclusive right amount to actual ouster.''   *Den v. Moore*, 3 Wall, Jr., C. C. (U. S.), 292.

In the Vangunden case, 52 Fed., 838, the reviewing court found the following instruction proper:

''In order to bring notice of an adverse holding of one tenant in common to his co-tenant, it is not necessary to give him actual notice; but if the hostile character of the possession is so openly manifest that his observation, as a man reasonably careful of his interest, would be sufficient to discover it, he would be deemed to have notice.''

''For the purpose of the statute of limitations, if the means of knowledge exist, and the circumstances are such as to put a man of ordinary prudence on inquiry, it will be held that there was knowledge of what would have been readily ascertained by such inquiry; and the limitation of the general rule is, that plaintiff can not set up successfully a fraudulent concealment of his cause of action if his failure to discover it is attributable to his own negligence.''   25 Cyc, 1216.

In applying these principles to the facts in this case, the questions may be grouped under two heads and viewed in two

aspects: first, as to the effect of the Summit county probate proceedings; and, second, as to the facts of adverse possession as shown by the words and conduct of the parties.

In regard to the effect of the proceedings in the Probate Court of Summit County, and the execution and delivery of the defective deed and its record in this county, I first call attention to the law applicable to the situation.

In Vol. 2 American & English Enc. of Law & Practice, pages 489 *et seq.*:

"In order to render the possession of one co-tenant adverse to the other, not only must the occupancy be under an exclusive claim of ownership, in denial of the rights of the other co-tenants, but such occupancy must have been made known to the other co-tenants, either by express notice or by such open and notorious acts as must have brought home to the other co-tenants knowledge of the denial of their rights. The evidence to show adverse possession by one co-tenant must be much clearer than between strangers to the title; and, as has been said, the hostile intent of the co-tenant in possession must be shown by clear and unequivocal proof.

"The ouster of the other co-tenants, in order to render the possession adverse need not be by violent or intimidating expulsion or repulsion; nor need the notice of the adverse holding be actually brought home to the other co-tenants by personal or formal communication; but it is sufficient, if the contrary is not shown, that the circumstances show that such knowledge may reasonably be presumed. Still if no actual notice is given of the adverse intent, it must be evidenced by acts of an unequivocal character. Since each co-tenant has an equal right to occupy the freehold, the exercise by one of ordinary acts of ownership is not sufficient to establish an adverse possession; and this is true though the co-tenant in possession makes improvements or pays the taxes. So, also, the fact that one tenant in common receives the entire profits does not necessarily render his possession adverse; but, of course, a finding that the possession was adverse may be based on long continued possession and the receipt of the rents and profits, especially where there is a refusal to pay over the rents and profits, and where such refusal is accompanied with a refusal to admit the co-tenant to possession.

"In the absence of any express statutory requirement, it is not essential to the acquisition of title to land by adverse possession that the possession should be held under color of title.

"Color of title may be defined as that which in appearance is title, but which in reality is not title. A rightful title is not required. The defense of adverse possession itself excludes the idea of rightful title on the part of him setting up the defense. Whenever an instrument, by apt words of transfer from grantor to grantee, gives proper possession of what purports to be the fee, it gives color of title.

"Where a deed executed by an officer of a court is relied on as color of title, irregularities or errors in the proceedings on which the order or decree for sale is based will not prevent the deed from conferring color of title, such as defects in proceedings to foreclose a mortgage."

In *Krom* v. *Brink*, 5 Cowan, 483:

"Though a tenant in common enter without claiming adversely to his co-tenant, yet his possession may afterwards become adverse by some notorious act and claim of title, as if he purchased his co-tenant's interest under a deed from the sheriff; and this though the deed be defective for want of a particular description of the land. To constitute an adverse possession, it is not necessary that the deed, under which it is claimed, be valid. The rule that an adverse possession, to bar an action in ejectment, must be hostile in its inception, and continue so for twenty years, does not apply to the entry of the tenant, but to the act by which the possession becomes adverse."

This defective deed gives color of title. The probate proceedings, the land contract found by the Probate Court of Summit County to have been subsisting between the parties, the deed executed without jurisdiction in the court to order the same, and the public record thereof in this county, together with the exclusive occupation by the defendants and their ancestor for nearly a half century, give character to this holding as that of adverse possession.

It remains to consider the other aspect of the case, which is that of adverse possession by words and conduct of the adverse claimants.

Plaintiff's counsel say it is plain that the plaintiff did not acquiesce in defendants' exclusive ownership; that he was for ten years threatening, and saying when his uncle shall have passed away, he would demand his rights, etc. There can be little, if any, doubt of this being plaintiff's uniform attitude. And it

seems to me it is equally plain that the attitude of the defendants was one of hostility to his claims and pretensions. Defendants were eager for the conflict, and urged plaintiff to begin before those who knew the facts were dead and gone. Plaintiff indicated an intention to bide his time. Their relations, in the language of diplomacy, were those of armed neutrality. Neighbors had told the plaintiff that he was half owner of the farm. When he went out with others to play ball some four years or more ago, he was told by neighbors that he did not need permission to go on the farm and play in the fields, as he was an owner. About twenty-five years ago, after his mother had collected her dower interest in this farm—and in which matters he acted once or twice as her agent to make the collection—he went over the farm with a lawyer, examining the land and learning its boundaries. And the attorney who went to Brecksville with him returned and wrote the letter which is set out above. Plaintiff says he knows nothing of that letter, and denies having authorized its sending. He was twenty years of age, just married, was living with his mother-in-law, and he thinks the lawyer acted under her suggestions. Plaintiff accompanied him over the farm, took him out and showed him the land, brought him back, and soon after wrote the letter, and now, after the lapse of twenty-five years, it will be unsafe to permit his words to speak louder than his acts; and the court can not escape the conclusion that he was then placing himself in an attitude to seek to dislodge the exclusive occupation of this farm by the defendants and their ancestor.

If adverse possession is dependent on plaintiff's acquiescing in defendants' claim of exclusive ownership, it is not made out. On the other hand, if it is dependent on defendants' hostile claim of exclusive ownership, it seems to me to be clearly made out.

Being of the opinion that the hostiilty of defendants' attitude, in that they ignored plaintiff's pretensions to having some rights in the farm, is clearly proved, I can come to no other conclusion than that adverse possession for twenty-one years is established on both grounds and both contentions of the defendants.

So finding, I find that the plaintiff is not entitled to partition of the land, and his petition is dismissed with his costs.