WALTON et al. v. WILD GOOSE MINING & TRADING CO.

(Circuit Court of Appeals, Ninth Circuit. May 25, 1903.)

No. 923.

1. ERROR—REVIEW—RULES GOVERNING ASSIGNMENTS OF ERROR.

It is an absolute necessity that plaintiffs in error should comply with the terms of rules 11 and 24 of the Circuit Courts of Appeals (90 Fed. cxlvi, 31 C. C. A. cxlvi) in relation to assignments of error and briefs requiring them to particularly point out the alleged error and to refer the court to the page of the transcript where the alleged erroneous ruling of the trial court is to be found, to the end that the court may understand the question presented without going beyond the assignment itself, and that the party objecting may be confined to the objection taken at the time, which must have been stated specifically.

2. PLEADING—JUDGMENT ON PLEADINGS—SUFFICIENCY OF REPLY.

A denial in a reply on information and belief of affirmative matter alleged in the answer is sufficient, under Code Alaska, § 69, 31 Stat. 343, c. 786, to prevent a judgment on the pleadings for want of a reply thereto.

3. ERROR—REVIEW—WAIVER OF MOTION FOR NONSUIT.

A motion for nonsuit is waived by the introduction of evidence after it has been overruled, and the ruling thereon cannot be assigned as error in the appellate court.

4. EJECTMENT—OUSTER—POSSESSION OF DEFENDANT.

The right to maintain an action in ejectment depends on the possession of the property at the time the action was commenced, and, where it is admitted that defendant was then in possession, is not defeated by the fact that plaintiff may have been in possession at a time prior or subsequent thereto.

5. TRIAL—ORDER OF PROOF.

Under the rule that the order of the introduction of evidence rests largely in the discretion of the court, permitting the introduction of a certificate of location of a mining claim before proof had been made of the actual location and marking of the claim or the recording of the certificate is not reversible error.

6. MINING CLAIMS—LOCATION NOTICES—ERROR IN DESCRIPTION.

Notices of location of mining claims are to be liberally construed, and are not invalid because of mistakes therein as to courses and distances.

7. EVIDENCE—OPINIONS—QUALIFICATION OF WITNESSES.

The opinions of miners as to the quantity of earth or gravel which a miner could move in a day were properly excluded, where they were not confined to ground of any particular character or condition or to any stated season, and the witnesses were not shown to be familiar with the ground in question in the action.

8. MINING CLAIMS—VALIDITY OF LOCATION.

Instructions relating to the requisites and validity of the location of a placer mining claim, the doing of assessment work thereon, and the question of forfeiture for failure to do such work, considered and approved.

9. INSTRUCTIONS—REQUIREMENT OF WRITTEN CHARGE—ALASKA STATUTE.

A statutory provision that on request the charge of the court "shall be reduced to writing and given to the jury without any oral explanation" (Code Alaska, § 187, subsec. 6, 31 Stat. 361, c. 786) is to be reasonably construed with reference to the purpose intended to be secured thereby, and a judgment will not be reversed because the court orally answered a question asked by the jury after they had retired, where it could not have prejudiced the plaintiff in error.

10. ERROR—MATTERS REVIEWABLE—PRESUMPTION FROM SILENCE OF RECORD.

Error cannot be assigned on the alleged failure to comply with the provision of a statute requiring that it should be read to the officers sent out in charge of a jury, where the record does not show that the statute

123 F.—14

was not followed, or that any objection was made on that ground by the plaintiff in error. In such case it must be presumed that the statute was read to the bailiff, and, if not, the error was waived.

11. NEW TRIAL—MISCONDUCT OF JURORS—EVIDENCE.

Statements made by jurors not under oath, after the trial is over, are not competent evidence to show misconduct; but, to warrant the granting of a new trial on that ground, the evidence of misconduct must be clear, certain, and convincing.

12. SAME—SEPARATION OF JURORS.

In the absence of injury, a mere separation of the jury in civil cases, without the consent of the court, is not per se sufficient ground for a new trial.

In Error to. the District Court of the United States for the Second Division of the District of Alaska.

Bruner & Bros., Elwood Bruner, A. J. Bruner, and George D. Schofield, for plaintiffs in error.

Page, McCutchen & Knight and Gordon Hall (E. J. McCutchen, Samuel Knight, and A. J. Daley, of counsel), for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. This is an action in ejectment brought by the plaintiff in the court below, defendant in error here, to recover the possession of a certain placer mining claim (designated as claim No. 19), and consisting of 20 acres of land situated on Ophir creek, in Council City Recording District in Alaska. The case was tried before a jury, which found a verdict in favor of the defendant in error for the property described in the complaint, without any damages for the use and detention thereof. Judgment was rendered upon the verdict, from which judgment the plaintiffs in error have sued out a writ of error. They base their claim to the land upon a relocation of the ground, and the real merits of the case involve but one question, viz., whether the original locator, through whom the defendant in error deraigns its title, performed the annual assessment work upon the mining claim in controversy during the year 1899. Upon this point there is much conflict in the evidence. Lena Walton, on behalf of the plaintiffs in error, testified that early in December, 1899, she went upon the ground "and made a careful examination of the claim for the purpose of ascertaining whether or not any assessment work had been done. I found Walker's initial stake, but there were no corner stakes whatever upon the claim. On or about the 10th or 12th of December, 1899, I went with * * * Wilson upon the .claim and examined the property. There was no work of any kind done upon the claim at that time. * * * On the morning of January 1, 1900, at the hour of 1 a. m., Mr. Wilson and I located the claim," and that there was but one stake on the ground at that time, and that was at the initial point of location. Several of the witnesses testified substantially to the same effect. On behalf of the defendant in error, evidence was introduced as to the existence of stakes at the four corners as well as at the initial point, and that in July, 1899, there

¶ 11. See New Trial, vol. 37, Cent. Dig. § 300.

was a cut from 30 to 50 feet long, 3 feet wide, and 3 feet deep; another cut 10 to 12 feet long, and about 5 feet deep; and other small prospect holes at other places, the work in value being variously estimated by the witnesses at from $100 to $200.

The record in this case comes before the court in a very unsatisfactory manner, and many of the alleged errors are not assigned in the manner required by the rules of this court. Exceptions were indiscriminately taken in the court below upon nearly every ruling made or action taken by the court, and in many instances no specific objection was made. The record shows that 71 exceptions were taken, and it contains 42 assignments of error, and the specifications of error in the brief are reduced to 26.

1. The Circuit Courts of Appeals have repeatedly called the attention of counsel to the absolute necessity of adhering strictly to the terms of rule 11 (90 Fed. cxlvi, 31 C. C. A. cxlvi), concerning "Assignments of Errors," and to subdivision 2 (a, b, c) of rule 24 (90 Fed. clxiv, 31 C. C. A. clxiv), in relation to "Briefs." As was said by this court in Migeon v. Montana C. R. Co., 77 Fed. 249, 252, 23 C. C. A. 156, 159:

"A strict compliance with these provisions would not only be of great advantage to counsel in their arguments, but would materially aid the court, and lessen its labors. It is the duty of an appellant to particularly point out the alleged error upon which he relies, and to directly refer the court to the page of the transcript where the alleged erroneous ruling of the court is to be found."

The object of the rules is to so present the matter raised by the assignment of error that this court may understand what the question is it is called upon to decide without going beyond the assignment itself, and also that the party excepting may be confined to the objection taken at the time, which must then have been stated specifically. The party complaining of the action of the lower court must lay his finger upon the point of objection, and must stand or fall upon the case he made in the court below. Appellate courts are not the proper forum to discuss new points. They are simply courts of review to determine whether the rulings of the court below, as presented, were correct or not. Van Gunden v. Virginia Coal & Iron Co., 52 Fed. 838, 840, 3 C. C. A. 294; City of Lincoln v. Street-Light Co., 59 Fed. 756, 8 C. C. A. 253; Lincoln Savings Bank & Saving Deposit Co. v. Allen, 82 Fed. 148, 27 C. C. A. 87; City of Anniston v. Safe Deposit & Trust Co., 85 Fed. 356, 29 C. C. A. 457.

2. The first assignment of error is as follows:

"That the said court erred in overruling and denying the motion made by counsel for plaintiffs in error, at the commencement of the proceedings, for judgment on the pleadings upon the following grounds, to wit: (1) Plaintiff's second amended complaint alleges a location made May 25, 1898, and it does not affirmatively allege the performance of the annual labor required by law during the succeeding year of 1899, or at any time prior to the location of Walton and Wilson, under which answering defendants claim title; (2) that it affirmatively appears from the answers of defendants Walton and French that they claim under an alleged location dated January 1, 1900, and that it affirmatively appears in the answers of said defendants that plaintiff and its grantors failed and neglected to perform the annual assessment work on said claim for the year 1899, or prior to the Wilson and Walton location. The

plaintiffs deny this last allegation on information and belief, and we contend that it is not a sufficient denial, and defendants are entitled to judgment on the pleadings."

The reply to the second amended answer is as follows:

"(1) Plaintiff has no knowledge or information sufficient to form a belief as to the new matters and things in said second amended answer set out and contained, and therefore denies each and every new allegation and the whole thereof, except as hereinafter stated."

In the argument of counsel for plaintiffs in error our attention is called to the fact, outside of the assignment of error, that the answer to which the above is the reply alleged that the ground in dispute "was on the 1st day of January, 1900, public, unoccupied, and unappropriated mineral land of the United States," and that no reply was made to this averment. This was not such "new matter" as required a reply by section 67 of the Alaska Code, 31 Stat. 343, c. 786, but was a denial of title in the defendant in error. The contention as to the denial in regard to the performance of the annual labor on the claim for the year 1899, "upon information and belief," is that the defendant in error must have known whether such labor was performed or not, and that its denial, upon information and belief, was evasive, and equivalent to no denial at all. The argument upon this point might have had some force if the defendant in error had been the locator of the claim, but the record shows that it did not locate the claim, and did not become interested therein until September 20, 1901, when it purchased the ground, and may not, in fact, have known at the time of filing its reply what the facts were in regard to the assessment work for the year 1899. It cannot, therefore, be said that the reply was not made in good faith or that it was not sufficient. It was the duty of the plaintiffs in error, if they deemed the reply insufficient, to have, within the proper time, demurred thereto, or moved the court to strike it out, as authorized by section 70 of the Alaska Code. By failing to do so, they virtually admitted that the reply was sufficient, and the case came on for trial upon the issues thus raised. The motion thereafter made for judgment upon the pleadings was, in any event, properly overruled, because such motion could only be considered when there was no demurrer or reply to the new matter constituting the defense. Section 69 of the Code so expressly provides:

"If the answer contain a statement of new matter, constituting a defense or counterclaim, and the plaintiff fail to reply or demur thereto within the time prescribed by law or rule of the court, the defendant may move the court for such judgment as he is entitled to on the pleadings."

3. It is claimed by the plaintiffs in error that the defendant in error is not entitled to maintain this action because they were in the possession of the property "at some time." The assignments of error in this respect are: (3) The court erred in overruling and denying defendants' motion for a nonsuit on the ground "that the plaintiff has failed to prove a cause sufficient to be submitted to the jury. That this is an action to recover the possession of real property, and they have shown affirmatively by their testimony that they were in possession of the property for a long time prior to the commencement of the action and subsequent thereto." (17) That the court erred in re-

fusing to give the following instruction during the course of the charge to the jury:

"The jury are instructed that this is an action to recover the possession of real property, and if you find from the evidence that the plaintiff entered into possession of the premises described in the complaint in the summer of 1901, and remained in possession of the premises by their officers or employés until subsequent to the time of the commencement of this action, then and in that event there could have been no ouster of the plaintiff as alleged in its complaint, and you must find for the defendants."

The point involved is also incidentally referred to in other assignments.

With reference to the possession of the property, the testimony of the witnesses is to the effect that Walker, the original locator of the claim, went upon the ground in May, 1898, and that at various times during the year 1899 his authorized agents occupied the ground. That just prior to January 1, 1900, in midwinter, after the mining season of 1899 had closed, Lena Walton, one of the plaintiffs in error, in company with one Wilson, from whom French, the other plaintiff in error, derived his interest in the claim, went upon the ground and relocated claim 19. The record is silent as to the possession of the claim during the year 1900. It affirmatively appears that both parties were in possession of some portion of the claim in 1901. On or about November 13, 1901, the defendant in error withdrew its men from the ground in controversy. The second amended complaint was filed March 22, 1902, and it is therein alleged that about September 20, 1901, the defendants, plaintiffs in error, "wrongfully and unlawfully entered upon and took possession of said mining claim, and ousted and ejected the plaintiff therefrom, and withheld the possession thereof, and ever since said date have, and now do, so withhold the possession of said claim from the plaintiff, to the plaintiff's loss, injury, and damage." In their answer to this averment, the plaintiffs in error "admit that on the said 20th day of September, A. D. 1901, the said defendants French and Walton did, ever since have, and do now withhold the possession of a portion of the premises described in plaintiff's complaint from plaintiff." If the defendant in error was entitled to the property, and the plaintiffs in error were unlawfully withholding the same when the action was first brought, the date of which is not shown in the record, then the defendant in error, upon making proper proofs of its title, would be entitled to recover, and the date of the alleged ouster would be immaterial. The record further shows that the plaintiffs in error in their respective answers allege, among other things, that they were placed in possession of said property by an order of court made March 3, 1902, "and that ever since" said date they "have been and now are in the peaceable and exclusive possession of said mining claim, and the whole thereof" Upon the trial of the case, the plaintiffs in error offered to show that an agent of the defendant entered into the possession of the claim in the month of September, 1901, and maintained the possession "up to the 14th day of November, 1901, and after the commencement of the suit." And it is claimed that the court erred in denying this offer. When all these facts and circumstances are considered, we are of opinion that no alleged error in the several assignments under consideration, prejudicial

to the rights of the plaintiffs in error, affirmatively appears. The motion for a nonsuit on the ground above stated was properly overruled. The motion for a nonsuit on the ground stated might be disposed of on the ground that, as presented, it is not subject to review in this court, because the plaintiffs in error did not rest their case upon the ruling of the court, but immediately proceeded to introduce evidence in their own behalf, and thereby waived their motion for a nonsuit. In Runkle v. Burnham, 153 U. S. 216, 222, 14 Sup. Ct. 837, 840, 38 L. Ed. 694, the court said: "By not resting on his motion for a nonsuit, and by thereafter offering his own evidence, the defendant waived his motion, and the overruling thereof cannot be assigned for error here." Union Pacific Railway v. Daniels, 152 U. S. 684, 14 Sup. Ct. 756, 38 L. Ed. 597, and authorities there cited. See, also, Sigafus v. Porter, 84 Fed. 430, 28 C. C. A. 443; Power v. Stocking, 26 Mont. 478, 482, 68 Pac. 857. The court did not err in refusing to give the instruction set forth in the sixteenth and seventeenth assignments of error, because the question of possession must relate solely to the time of the commencement of the action, and not to "any time prior" thereto or "at any time subsequent." The court did not err in refusing to allow the plaintiffs in error to introduce evidence contrary to the affirmative allegations of their answer.

4. It is claimed that the court erred in permitting plaintiff, defendant in error, to introduce in evidence the location certificate, which is set out in full in the second assignment of error. In the brief of the plaintiffs in error, numerous reasons are assigned to establish the error complained of: (1) That the description in the certificate did not conform to any allegation contained in the second amended complaint, in this: that the complaint described a claim running southeasterly from the initial point, and the location notice describes a claim running northerly from the same point. (a) That no foundation had been laid for the introduction of said certificate; (b) that the description therein given had not been identified with the description of the premises described in the amended complaint; (c) that it had not been shown to be an original record or a certified copy of such record, (d) or that it had ever been recorded; (e) that it had not been shown that a valid location had been made, (f) or that the boundaries of the claim had been marked. The order of introducing the testimony in every case is largely within the discretion of the court, and the exceptions taken, that other matters had not been established at the time the notice was introduced, are without any merit. The introduction of the location notice was at best but a preliminary step in the order of proofs necessary to establish the rights of the defendant in error to the mining claim in controversy. The location notice is sufficiently identified with the description in the complaint. Both refer to claim 19. If there was any clerical error as to the courses or distances, the rule is that such discrepancies are to be controlled by the monuments erected upon the ground, or references to other well-known objects or locations. The objections of counsel as to the difference in the descriptions of the claims in the complaint and notice are hypercritical in their character. The description of the mining claim in the amended complaint is as follows:

"Placer mining claim, known as and called 'Number Nineteen (19) Above Discovery on Ophir Creek,' formerly known as Kivak creek, a tributary of the Neuklux river, in the El Dorado mining district, in the district of Alaska, more particularly described as follows, to wit: Commencing at the original location stake of E. S. Walker, situated about the center of the upper end line of No. 18 above Discovery on Ophir Creek; thence north, 53 degrees and 28 minutes east, 356.8 feet, to a stake; thence south, 60 degrees and 16 minutes east, 1,426.5 feet, to a stake, situated about 158.5 feet in a southerly direction from the original northwest corner stake of the claim marked on the ground by the said E. S. Walker, and known as the 'Walker Location' or 'No. 19 Ophir'; thence south, 42 degrees 25 minutes west, 690.8 feet, to a stake; thence north, 53 degrees and 30 minutes west, 1,505.6 feet, to a stake; thence north, 54 degrees and 1 minute east, 186.3 feet, to point of beginning—said claim containing less than twenty acres."

In the certificate of location it is described as follows:

"No. 19 Above Ophir. Notice is hereby given that the undersigned, having complied with the requirements of chapter six of title thirty-two of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 1422], and the local customs, laws, and regulations, has located twenty (20) acres of placer mining ground situated in El Dorado mining district, Northwestern Alaska, and described as follows: Beginning at the upper or northerly end of claim No. 18; thence running fifteen hundred feet in a northerly direction along Ophir (formerly the Kivak) creek; thence 300 feet on either side of the middle of the channel of said creek. Discovered May 25th, 1898. Located May 25th, 1898. Locator, E. J. Walker. Recorded June 23d, 1898. Recorder, H. P. Mordaunt. Charges, $5.00, paid."

Notices of location of mining claims in remote settlements and in new mining districts are seldom drawn with perfect accuracy. The courses and directions cannot readily be ascertained, because the wandering prospector does not always carry a pocket compass, nor is he often accompanied by a surveyor, who could with his instruments correctly give the metes and bounds. In Book v. Justice (C. C.) 58 Fed. 106, 115, the court said:

"In construing notices of this character, where, under the mining rules and local regulations or state laws, such notices are required to be posted upon the ground, the courts are naturally inclined to be exceedingly liberal in their construction. Such notices are often drawn by practical miners, unaccustomed to legal forms and technical phraseology; hence the language used in the notices is often subject to more or less criticism by counsel learned in the law, and engaged in preparing documents in legal shape and form. Then, again, locations are often made without any accurate knowledge of the true course and directions which a compass would readily give, and mistakes in the notice as to the direction and course of the ground located often occur. But such mistakes do not invalidate the location. Positive exactness in such matters should never be required. It is the marking of the location by posts and monuments that determines the particular ground located."

5. There are several assignments of error to the effect that the court erred in refusing to permit certain named witnesses introduced by the plaintiffs in error to answer questions propounded to them as to how long it would take to dig holes or excavate cuts of given dimensions, what is considered by miners generally as a day's labor in the performance of general assessment work, and what number of cubic yards of earth can be removed per day. Conceding, for the purpose of this opinion, that the questions were material and relevant to the issues raised in this case, it nevertheless would be necessary, before the opinion of the witnesses could be given, to show that the witnesses were competent, by their experience as practical miners, to give an opinion. It does not affirmatively appear that the witnesses, or either

of them, were qualified to give an opinion. They were miners by occupation, and had worked as such for several years; but it does not appear that either of them had worked upon or examined claim 19 on Ophir creek, or knew whether the ground on that claim was of the same general character as in the places where they had worked, and the questions, as asked, were not confined to the seasons of the year when the work was done, whether the ground and gravel was soft or loose, hard or frozen. Some of the witnesses were allowed to give their opinion as to the number of cubic yards a miner could remove in a day. One said, "A man in the character of gravel—loose gravel— should make ten or twelve cubic yards per day." Another, a miner of extended experience in Montana and Alaska, testified, "A man can move six yards or six and a half yards of ordinary loose bar gravel per day, where eight men are being worked on a string, three of whom are handling the tailings." The qualification of any witness to express an opinion should always be made to appear to the satisfaction of the court. Opinion evidence, like expert testimony, is of but little, if any, value unless connected with a full statement of the facts within his own knowledge; it always depends more or less upon the facts stated by them which form the basis of their opinion.

6. We have carefully examined the alleged errors of the court in giving or refusing instructions, and find no prejudicial error therein. Considered as a whole, the instructions given contain a clear and fair statement of the facts and the law applicable to this case. The most important points urged by plaintiffs in error refer to the manner of locating placer mining claims, and the acts necessary to be performed in order to constitute a valid mining location. It is further claimed that certain portions of the instructions are unsupported by the evidence; that the judge usurped the functions of the jury in failing to instruct the jury that it was the exclusive judge of the facts; that the court erroneously instructed the jury that Walker's location was properly marked on the ground; and erroneously instructed the jury in regard to the forfeiture of mining claims, etc. The court instructed the jury, among other things, as follows:

"(a) It is the duty of the court to determine all questions of law, and it is your province and duty to determine all questions of fact. * * * (b) The affirmative of the issue is upon the plaintiff to prove the original location, discovery of gold, and the marking of the boundaries of the claim in dispute by Walker, prior to the 1st day of January, 1900, and that the burden of proof in these matters is upon the plaintiff, who must establish each of them by a preponderance of the evidence. On the other hand, the affirmative of the issue is upon the defendants to establish that Walker did not do the necessary assessment work on the claim in 1899, or cause it to be done, and the burden of proof upon that question is upon the defendants. * * * (2) Plaintiff claims title to the premises in dispute as a placer mining claim. The right of possession of a placer mining claim in such cases must be based on a valid location thereof in conformity with the laws of the United States. * * * (4) Under the laws of the United States, the requisites of a valid location of placer mining claims are: First. The ground sought to be located must be vacant, unappropriated mineral land belonging to the government of the United States. Second. The location must be marked on the ground, so that its boundaries can be readily traced. Third. Discovery of mineral in the ground. (5) A notice of location was not required by the laws of the United States to be either posted, filed, or recorded in the office of the mining

recorder at the time of the location by Walker, or by Wilson and Walton. Such notice was then required to be posted, filed, and recorded only when the mining rules, regulations, and customs of the district provided for it. No evidence was introduced tending to prove the existence of any local rule, regulation, or custom adopted by the miners in the district where this mining claim was located requiring the posting, filing, and recording of notices of location at the time of the location of the mine in question; you are therefore instructed that the posting, filing, and recording of such notice was not necessary to the validity of either of the locations in question. If any such notice was posted, filed, or recorded, however, that is a fact which you may consider in determining whether or not either of the parties did, as alleged, in fact make a location of the ground in question. (6) As to whether or not there has been a sufficient marking of the location on the ground so that the boundaries could be readily traced, is a question of fact for you to decide. Any marking of the ground claimed by stakes and monuments, and written notices whereby the boundaries of the claim located can be readily traced, is sufficient. (7) It is not necessary that the marking of the location on the ground be done by the locator in person; such marking may be done by the agents or employés of the locator as well as by the locator himself. * * * (8) Nor is it necessary that a discovery of gold be made by the locator in person; a discovery of gold made by any agent or employé of the locator, or by any person acting in his behalf and for his benefit, and if made before any intervening rights attach, will be just as valid as if made by the locator in person. * * * (9) It is not necessary that the acts requisite to perfect a mineral location be performed in any particular order; it is sufficient if they are all performed before any subsequent location is made. * * * (10) In the absence of evidence to the contrary—and there has been no evidence to the contrary produced on the trial of this case—the law will presume claim No. 18 on Ophir creek to be a well-known natural object and permanent monument. * * * (12) You are instructed that if you believe from the evidence that, prior to the time of the location by Lena Walton and J. H. Wilson of the mining claim described in plaintiff's second complaint, it was marked on the ground by stakes and monuments as claimed by the plaintiff, and set there by Captain Walker or by others at his request and for his benefit, then and in that event you are instructed that the visible stakes and monuments placed on the ground would control the location of the claim, if the same should be inconsistent with the measurements and description contained in the location notice, provided that you should find that the location of the claim is approximately the same in both. (13) The evidence in the case shows that the location originally marked by Walker or his agents on the ground was too large; that is, that it contained more than twenty acres. You are instructed that this did not invalidate the Walker location, but merely rendered it voidable as to the excess over and above twenty acres, which is what the law allows in placer claims. * * * (15) When a valid location of a mining claim is once made it vests in a locator and his successors in interest the right of possession thereto, which right cannot be divested by the obliteration or removal, without the fault of the locator or his successor in interest, of the stakes and monuments marking its boundaries, or the obliteration or removal from the claim of the location notice posted thereon. * * * (17) If, under the foregoing instructions, you should find that prior to the location of Lena Walton on the first day of January, 1900, Captain E. S. Walker, the grantor of the plaintiff, through himself, his agents or employés, made a valid location of the mine described in plaintiff's second amended complaint, then it will be your duty to consider whether or not the annual labor was performed on said mine by plaintiff's grantor, Captain Walker, during the year 1899. * * * (21) The law does not prescribe the particular kind of labor which is to be performed, nor in what it shall consist, nor the manner in which it shall be performed. Nor does the law require that it shall benefit the claim in the sense of making the claim more valuable after the performance of the labor than before. And you are therefore instructed that any labor performed upon the claim, if sufficient in amount, will satisfy the law, if its tendency is to develop the claim as a mine. (22) You are instructed that the digging of prospect holes, or the digging of a

cut or cuts, or drain ditch or ditches, the removal of brush, panning, etc., and all things done necessary for the doing of the assessment work, if sufficient in amount, will be compliance with the law. (23) Work done for the purpose of discovering mineral, whatever the particular form of the deposit, is also work and improvement within the meaning of the statute. * * * (24) You are instructed that the law requires one hundred dollars' worth of work. And in determining the amount of work done upon a claim for the purpose of representation, the test is as to the reasonable value of said work, not what was paid for it, or what the contract price was. But it depends entirely upon whether or not said work was reasonably worth the sum of one hundred dollars. * * * (25) In estimating the value of the labor performed, the jury should consider the distance of the mine from the nearest point where labor could be procured, the cost of maintaining men while the labor was being performed, the current rates of wages, and any other necessary and reasonable expense which would reasonably and necessarily be incurred in the performance of the said labor."

These instructions, of themselves, show that the objections urged thereto are not well taken. Nearly all of the legal principles announced therein with reference to the notice of location, the character of assessment work, the discovery of mineral, the marking of the boundaries, recording of the claims, destruction or removal of the stakes, are in line with the principles expressed in Book v. Justice M. Co. (C. C.) 58 Fed. 106, 111–118, 124–128, which have time and again been approved by the courts. Doe v. Waterloo M. Co., 70 Fed. 455, 458, 17 C. C. A. 190; Migeon v. Montana C. R. Co., 77 Fed. 249, 255, 23 C. C. A. 156; Garrard v. Silver Peak Mines (C. C.) 82 Fed. 578, 585; Perigo v. Erwin (C. C.) 85 Fed. 904; Erwin v. Perego, 93 Fed. 608, 611, 35 C. C. A. 482; Smith v. Newell (C. C.) 86 Fed. 56; Nevada Sierra Oil Co. v. Home Oil Co. (C. C.) 98 Fed. 673, 676; Haws v. Victoria Copper M. Co., 160 U. S. 303, 318, 16 Sup. Ct. 282, 40 L. Ed. 436; McShane v. Kenkle, 18 Mont. 208, 212, 44 Pac. 979, 33 L. R. A. 851, 56 Am. St. Rep. 579; Strasburger v. Beecher, 20 Mont. 143, 151, 49 Pac. 740; Hayes v. Lavagnino, 17 Utah, 185, 197, 53 Pac. 1029; Wilson v. Triumph M. Co., 19 Utah, 66, 76, 56 Pac. 300, 75 Am. St. Rep. 718. Upon these points further discussion is unnecessary. Upon the other points but little need be said. That the excess of 20 acres in the location referred to in instruction No. 13 did not invalidate the location, but merely rendered it voidable as to the excess, see Rose v. Richmond, 17 Nev. 25, 59, 60, 27 Pac. 1105; Richmond v. Rose, 114 U. S. 576, 579, 580, 5 Sup. Ct. 1055, 29 L. Ed. 273. The remark of the court in this instruction, that "the evidence in the case shows that the location originally marked by Walker or his agents on the ground," etc., did not invade the province, or usurp the functions, of the jury. The court did not assume as undisputed a question of fact; the jury could not have been misled thereby. The court stated in one place that the question whether the marking of the ground is sufficient or not is a question of fact for the jury, and in other instructions told the jury that the burden of proof to establish the marking of the boundaries by Walker prior to January 1, 1900, was upon the plaintiff (defendant in error), and that it must establish them by a preponderance of the evidence. The rule is universal that the entire charge must be taken together, and when the instructions in this case are read in their entirety the criticism of counsel is found to be wholly untenable and unworthy of extended discussion.

7. The assignments of error 32, 33, and 34, that the court erred in giving instructions in relation to the question of forfeiture, are not well taken. One of these instructions was copied from the decision of the Supreme Court of the United States in Hammer v. Garfield M. Co., 130 U. S. 291, 301, 9 Sup. Ct. 548, 552, 32 L. Ed. 964, where the court said: "A forfeiture cannot be established except upon clear and convincing proof of the failure of the former owner to have work performed or improvements made to the amount required by law." All the instructions given upon this point are fully sustained by the authorities. Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735; Johnson v. Young, 18 Colo. 625, 629, 34 Pac. 173; Colman v. Clements, 23 Cal. 245, 247; Bishop v. Baisley, 28 Or. 119, 125, 41 Pac. 936; Oreamuno v. Uncle Sam M. Co., 1 Nev. 215, 218; 2 Lindley on Mines, § 645, and authorities there cited.

8. The Code of Alaska, subsec. 6, § 187, provides:·

"The court shall then charge the jury, and if either party require it, and shall at the commencement of the trial give notice of his intention so to do, the charge of the court, so far as it relates to the law and the facts of the case, shall be reduced to writing and given to the jury by the court as written, without any oral explanation." 31 Stat. 361, c. 786.

The court in the present case was at the beginning of the trial requested by both parties to instruct the jury in writing. It is earnestly contended by counsel for the plaintiffs in error that the court erred in instructing the jury orally after they had retired to consider their verdict. The record shows that the jury was brought into the courtroom upon their request to be instructed by the court "in regard to damages." There are over a dozen pages of the printed record filled out by affidavits as to what then occurred. But the sum and substance of the whole matter is that the jury asked the court whether they would have to find damages in the event that they found for the plaintiff, and the court orally replied "No." The jury shortly thereafter came into court with a verdict in favor of the plaintiff, without assessing any damages. As the jury found no damages, it is difficult to see how the plaintiffs in error could have been injured by this so-called "oral instruction." But counsel says that the court violated a plain provision of the statute, and that his clients have the right to demand that the statute of Alaska with reference to the trial of causes should be strictly followed. Brewer, J., in State v. Potter, 15 Kan. 302, 320, in construing a similar statute upon this point, clearly stated the rule applicable to the facts of this case, as follows:

"It may be remarked that the purpose of this statute is to secure to the defendant the exact rulings of the court, in order that he may avail himself of any errors in the rulings; that it was not intended to cast any unnecessary burdens upon the court, or to hamper and restrict communications between the court and jury; that it should be so construed as fairly to secure that purpose, and not to be made a mere weapon of technical error."

And in the course of his opinion further said:

"The mere fact that an oral communication has passed from the court to the jury is not of itself proof that the statute has been disregarded, but the court may properly make oral statements to the jury in reference to the form of the verdict, the manner in which the trial has been conducted, the behavior of the jury or counsel or parties, or any other oral statement

which is not fairly and strictly a direction or instruction upon some question or rule of law involved in or applicable to the trial, or a comment upon the evidence."

See, also, Boggs v. United States, 10 Okl. 424, 431–438, 63 Pac. 969, 65 Pac. 927, and authorities there cited; 11 Ency. Pl. & Pr. 257, and authorities there cited.

9. There is another point, based upon a statutory provision, argued at considerable length, which, although not properly assigned as error, and no exception appearing to have been taken thereto in the court below, ought perhaps to be noticed, as it, of itself, will serve to illustrate the necessity of the enforcement of the rule first noticed in this opinion, and furnish a good reason for refusing to notice many other points. Section 192 of the Alaska Code, 31 Stat. 361, c. 786, provides that after the charge of the court the jury, if they retire, must be kept under the charge of one or more officers, and that:

"The officer shall, to the utmost of his ability, keep the jury thus together separate from other persons, without drink, except water, and without food, except ordered by the court. * * * Before any officer takes charge of a jury this section shall be read to him, and he shall be then sworn to conduct himself according to its provisions, to the utmost of his ability."

There is nothing in the record to show that the bailiff was not properly instructed and sworn, or that the provisions of the statute were not read to him. The minutes of the court show that "the jury were instructed by the court in writing, and retired for deliberation at 8:45 p. m. in charge of Bailiffs Lawrence and Armand, previously sworn for that purpose." The record does not show that any objection was made at any time, or that as a matter of fact the statute was not read to them. The plaintiffs having been silent at that time, they ought not now to be allowed to open their mouths on this subject, after losing their case in the court below. They waived whatever rights they may have had by not promptly taking their objections at the proper time. 12 Ency. Pl. & Pr. 541, and authorities there cited. Moreover, the law presumes that every officer does his duty, and, in the absence of any showing to the contrary, the law would presume that the statute was read to him when he was sworn, in strict accordance with the provisions of the law.

10. The forty-first assignment of error is that the court erred in denying defendant's motion for a new trial. This alleged error was orally argued at great length. The point sought to be made was the misconduct of the jury after they had retired to deliberate upon their verdict. It was claimed by the plaintiffs in error that the jury were confined in the Golden Gate Hall adjoining a room where there had been a banquet the night before, and that some of them removed hinges from the door leading into this banquet room and brought therefrom "eggnog or punch, and drank it in the jury room," and that some of them were "more or less under the influence of liquor"; that one of the jurors was taken downtown by one of the bailiffs "to get some tobacco," and disguised his face at the request of the bailiff, so that he might not be recognized on the street; that another juror, accompanied by a bailiff, went to his own house, and stayed away from the jury room about 15 minutes; that other jurors went out from the

jury room to a closet, etc., etc. Numerous affidavits setting forth these transactions were presented to the court. An examination of them shows that all the statements therein contained are pure hearsay, consisting of conversations had by the affiants with some of the jurors, or declarations made by jurors in their presence. There is no pretense that the prevailing party in the action knew of or had anything whatever to do with the alleged misconduct of the jurors, or that the jurors, or either of them, were approached or improperly influenced by any person. There are no facts in regard to this assignment that would authorize this court to interfere with the order of the court below denying a new trial. Statements made by jurors not under oath, after the trial is over, are not competent evidence. Cain v. Wallace, 46 Kan. 138, 144, 26 Pac. 445; Peterson v. Skjelver, 43 Neb. 663, 671, 62 N. W. 43; Phillips v. Town of Scales Mound, 195 Ill. 353, 363, 63 N. E. 180. A new trial on the ground of the misconduct of jurors should not be granted unless the evidence of misconduct is clear, certain, and convincing. Omaha Fair Ass'n v. R. Co., 42 Neb. 105, 108, 60 N. W. 330. In the absence of injury, a mere separation of the jury in civil cases, without the consent of the court, is not per se sufficient ground for a new trial. 12 Ency. Pl. & Pr. 575, and authorities there cited; 2 Gra. & Wat. on New Trials, 502.

11. There are numerous other assignments of error and objections taken that fall within the rule first stated in this opinion, or that are purely technical, wholly immaterial, or of a trifling nature. It is enough to say that we have examined all the points raised, whether noticed or not, and find them to be without any merit whatever. Upon the whole record, our conclusion is that no prejudicial error has been affirmatively shown. It must not be mere abstract error, but it must be prejudicial and injurious in order to avail the plaintiffs in error, for otherwise they have no cause of complaint. Contreras v. Merck, 131 Cal. 211, 214, 63 Pac. 336; Boggs v. United States, 10 Okl. 424, 63 Pac. 969, 65 Pac. 927.

The judgment of the District Court is affirmed, with costs.