## UNITED STATES v. WEINBERG et al.

(District Court, D. Minnesota, Third Division. October 17, 1923.)

**Criminal law ⬡1071—Writ of error; insufficiency of record.**

Petition for allowance of a writ of error and supersedeas will be denied, where the assignments of error wholly fail to comply with rule 11 of the Circuit Court of Appeals (150 Fed. xxvii, 79 C. C. A. xxvii), by setting out separately and particularly each error assigned, and where, further, the errors assigned are to the admission and exclusion of evidence, for which there is no foundation in the bill of exceptions.

Criminal prosecution by the United States against Louis Weinberg and Paul Berman. On application by defendants for allowance of writ of error and supersedeas. Denied.

Lafayette French, Jr., of St. Paul, Minn., for the United States.
George L. Siegel, of St. Paul, Minn., for defendant.

McGEE, District Judge. The testimony on the part of the government, briefly stated, is that on March 13, 1923, about 6 o'clock p. m., two prohibition agents, Sunde and Tetzel, accompanied by a person not in the employ of the government, but apparently acting in the rôle of informer, met a man named Kelly on the platform in front of 301 East Thirteenth street, St. Paul, Minn. Sunde inquired of Kelly if he knew where he could get a drink of whisky, and the result of the inquiry was that the four persons mentioned entered what appeared to be a grocery, candy and cigar store at the street number mentioned. Kelly was apparently familiar with the place and acquainted with the defendants. The defendants, Berman and Weinberg, were in the store.

Separating from his companions, Kelly went to the point in the store at which the defendant Berman was engaged doing work of some kind, and after a conversation with Kelly, Berman disappeared through the back door of the store into the open court of the building, and in about a minute returned with two bottles of what proved to be moonshine whisky, from one of which he served drinks to the four persons mentioned, and sold the other bottle to Sunde, collecting from the latter 25 cents per drink for the four drinks, and $1 for the bottle. Sunde delivered to Berman, in payment for the whisky, a $5 bill, which the latter delivered to the defendant Weinberg, who was standing behind the counter at the till in another part of the store, who deposited the money in the till, made the change, and rang up the same. The drinks were served and the bottle of whisky delivered, as stated, in the presence of defendant Weinberg.

Twenty minutes after leaving the place on March 13, 1923, the two agents and the informer returned to the store to see if they could get further information as to the point outside the back door at which the supply was kept, and at that time Agent Tetzel bought from the defendant Berman two rounds, of three drinks each, and paid him therefor $1.50, and, as in the other case, Berman went out the rear door into the open court of the building, and returned a moment later with a bottle of whisky, from which the six drinks were served. The building is a three-story frame building on an oval-shaped piece of land, and

occupies the entire tract, with an open court in the center. All of the storerooms face on streets, and in the rear open into the open court. On each of the visits when Berman went out through the back door into the court of the building, he closed the door after him, so that the agents were not able to tell what direction he took, whether to the right or left, when he entered the court.

On the 24th of April, 1923, four prohibition agents, Nelson, Simons, Olson, and Baskfield, armed with a search warrant, went to 301 East Thirteenth street, and found the defendant Weinberg in charge of the premises. Berman was not there. Agent Simons informed the defendant Weinberg that he and his companions were government officers, with a search warrant authorizing them to search the premises, served the warrant upon him, and then proceeded with the search. Olson and Nelson remained in 301 East Thirteenth street, while Baskfield and Simons went out the front entrance and upstairs. The search warrant covered the whole building. There was a woman clerk in the store. She was the wife of the defendant Berman. Simons and Baskfield returned to the store, and Baskfield went out the rear door, and was gone a few minutes, and returned, saying there was a door out there opening into the court, on which there was a Yale lock, and asked the defendant Weinberg for the key to that room. Weinberg denied having a key to the room. He was asked for his bunch of keys, and produced the bunch, with two Yale keys thereon, which he said were keys for his automobile. He said he did not know where his car was. The agents took the keys, and went out into the court to the door in question, applied the key to the lock, and opened the door, which admitted them into a room that had all the appearances of a saloon, although it is referred to in the testimony by the defendants and their counsel as the dwelling house or residence of the defendant Berman.

In the room there was a couch, a small table, a sink, and a stove. Just in front of the couch, and between it and the table, was a gunny or burlap sack, in which there was a five-gallon jug filled with white moonshine whisky. At the end of the couch, and between it and the outside door, were two 5-gallon jugs in burlap sacks, one full of whisky and the other containing one gallon. Hidden under the couch were whisky bottles in a burlap sack and paper carton, about a dozen in the carton and as many more in the burlap sack. There were pints and half pints. There was a bag partially filled with corks. There were four or five ordinary whisky glasses; two funnels were hanging on the wall above the couch. There were rubber tubes, apparently for syphoning whisky from the jugs.

In the other room there was a bed and dresser, on which were photographs of the defendant Berman and his wife. The agents went back in the grocery store and asked the defendant Weinberg to go into the room mentioned, which he did, and returned shortly thereafter to the grocery store, where the agents asked Mrs. Berman to repeat in the presence of Weinberg what she had told them in his absence, which she did, saying that the liquor belonged to Weinberg, and that he kept it in that room, and that he had the key for it, to which statement Weinberg made no response.

The agents, in making the search, went behind the counter in the grocery store, and found two half pint and three pint bottles empty, but smelling strongly of moonshine whisky. Two of them were in a corn meal sack. There was a small thin-shelled glass sitting on the little counter back of the main counter.

Both of the defendants denied absolutely and positively the testimony of the prohibition agents. Weinberg admitted ownership of the store, but denied absolutely that the agents were in his place on the 13th of March, or that he ever saw them until about the time of the trial. Berman denied that he was at 301 East Thirteenth street at all on March 13th, and placed himself in another part of the city of St. Paul from early on that morning until the following night. Berman denied, when he left the room in which the outfit mentioned was found, early on the morning of the 13th of March, that the gunny sacks with three 5-gallon jugs containing 11 gallons of whisky were in his room, and insisted that somebody must have put the liquor in there after he left in the morning, unknown to him, and without his permission.

The testimony of the defendants was remarkable for its evasive and shifty character. It was in direct and irreconcilable conflict with that of the government agents, with no possible room for mistake. It was a case where one side or the other committed deliberate perjury, and the jury very quickly, by their verdict, determined that the perjury was committed by the defendants. From all the facts and circumstances disclosed by the evidence, no other conclusion was possible.

The verdict of the jury finding the defendants guilty under the second or sale count is not questioned by the defendants in any of the errors assigned, which are four in number, and fail entirely to conform to the requirements of rule 11 of the Circuit Court of Appeals (150 Fed. xxvii, 79 C. C. A. xxvii) in two respects: (1) They do not "set out separately and particularly each error asserted and intended to be urged." (2) The second, third, and fourth assignments are directed against the admission of testimony over the objections of the defendants, and fail to comply with the provisions of rule 11, which provides that:

"When the error alleged is to the admission or to the rejection of evidence, the assignment of errors shall quote the full substance of the testimony admitted or rejected. * * * When this is not done, counsel will not be heard, except at the request of the court, and errors not assigned according to this rule will be disregarded; but the court, at its option, may notice a plain error not assigned."

It is impossible for the writer, and it will be impossible for the appellate court, to determine from the assignments of error what foundation there is for the same without searching the entire record. Where, in a transcript of 157 pages of testimony, the rulings complained of can be found, is not indicated in any way.

In Sovereign Camp v. Jackson (C. C. A. 8) 97 Fed. 382, 384, 38 C. C. A. 208, 210, Judge Sanborn, speaking for the court, said:

"Did this assignment 'set out separately and particularly each error asserted and intended to be urged'? * * * Rule 11 is that each error asserted and intended to be urged shall be separately and particularly pointed out, not generally averred. None of the errors asserted in the argument, none of the

293 F.—27

questions of law or of fact there discussed, are pointed out in this assignment particularly or at all. * * * The assignment and the specification alike utterly fail to comply with the express terms of the rules. Nor are they more fortunate in serving the purpose to accomplish which these rules were made. Assignments and specifications of error were required for the purpose of informing the court and the counsel for the opposing party what questions would be presented for consideration and review in the appellate court. An assignment which fails to point out these questions—one which compels court and counsel to look further and to search the brief in order to discover them—entirely fails to accomplish the purpose of its being, and is utterly futile. The assignment and the specification in the case at bar are apt illustrations of such a failure."

In Walton v. Wild Goose Mining & Trading Co. (C. C. A. 8) 123 Fed. 209, 211, 60 C. C. A. 155, it is said:

"The Circuit Courts of Appeals have repeatedly called the attention of counsel to the absolute necessity of adhering strictly to the terms of rule 11, * * * concerning 'assignments of errors.' * * * The object of the rules is to so present the matter raised by the assignment of error that this court may understand what the question is it is called upon to decide without going beyond the assignment itself, and also that the party excepting may be confined to the objection taken at the time, which must then have been stated specifically. The party complaining of the action of the lower court must lay his finger upon the point of objection, and must stand or fall upon the case he made in the court below. Appellate courts are not the proper forum to discuss new points. They are simply courts of review to determine whether the rulings of the court below, as presented, were correct or not. Van Gunden v. Virginia Coal & Iron Co. (C. C. A. 4) 52 Fed. 838, 840; City of Lincoln v. Street-Light Co. (C. C. A. 8) 59 Fed. 756; Lincoln Savings Bank & Saving Deposit Co. v. Allen (C. C. A. 8) 82 Fed. 148; City of Anniston v. Safe-Deposit & Trust Company (C. C. A. 5) 85 Fed. 356."

In the face of the cases cited, and a score of other cases that might be cited from the Circuit Court of Appeals of the Eighth Circuit on this precise point, if a writ of error were allowed, the case would be affirmed, as many have been in that court, for failure to conform to the requirements of rule 11.

If the assignments of error had conformed to the requirements of rule 11, still they would have presented no question for the consideration of the appellate court, because they are predicated upon the assumption that the evidence on which the verdict of guilty on the first or possession count rests was not admissible, for the reason that the search warrant did not authorize a search of the room in which that evidence was found. In other words, it is claimed that the search warrant did not authorize the officers to search any part of the building except the grocery store at 301 East Thirteenth street.

Whether the search warrant did or did not authorize the search of the room in which the whisky and other saloon paraphernalia were found, and whether the evidence upon which the search warrant was issued was sufficient to warrant its issuance, can only be determined from an examination of those documents, and if they are not embodied in the bill of exceptions, the question of their sufficiency for the purpose stated is one that cannot be considered or determined on the pending application, or by the appellate court if a writ of error were allowed. The case in this respect is very similar to that of Lincoln Sav-

ings & Deposit Co. v. Allen (C. C. A. 8) 82 Fed. 148, 149, 27 C. C. A. 87, 89, in which Judge Sanborn, speaking for the court, said:

"Twelve of the remaining errors are that certain paragraphs of the charge of the court, which appear to have been wrested from their connection, and quoted in the assignment of errors, and which relate almost entirely to the effect of the evidence which had been produced in the case, are erroneous. But the evidence which was before the trial court has not been presented to us, and the presumption is that there was evidence which warranted the charge. There is no bill of exceptions and no copy of the charge of the court in the printed record. There is nothing in it to show that the paragraphs quoted in the assignment of errors were ever given to the jury by the court, or that any exception was ever taken to any of them by the plaintiff in error. The only information we have upon this subject is contained in the statement which precedes each paragraph in the assignment of errors, and is in these words: 'The court erred in giving the following instruction, to the giving of which the defendant duly excepted at the time.' But the assertion of the defeated party in his assignment of errors, either that the court erred, or that it gave any instruction, or that the plaintiff in error excepted to that instruction, is insufficient, without more, to warrant an appellate court in reversing a judgment. The facts that portions of the charge challenged were given, and that exceptions were taken to them, must be established by a bill of exceptions, settled and signed in accordance with the act of the Congress of the United States, before a federal court can find the errors and reverse the judgment. Rev. St. § 953; Clune v. U. S., 159 U. S. 590, 16 Sup. Ct. 125; Blake v. U. S., 18 C. C. A. 117, 71 Fed. 286; Mussina v. Cavazos, 6 Wall. 355, 363; Origet v. U. S., 125 U. S. 240, 8 Sup. Ct. 846. We cannot reverse this judgment on the ground that these alleged errors in the charge of the court exist (1) because there may have been evidence which warranted them and all the evidence is not presented to us, so that we can see that it was insufficient; (2) because it does not appear from the record that any of the challenged paragraphs were given to the jury by the court; and (3) because it does not appear that any exception was taken to any of them if they were given. The remaining error assigned is that the court refused to give an instruction which was requested by the defendant. But that instruction relates to the effect of the evidence in the case, and, in the absence of any proof by a bill of exceptions that all the evidence is before us, and that the plaintiff in error excepted to that refusal, there is nothing here for our consideration. The judgment below must accordingly be affirmed."

In McGrath v. U. S. (C. C. A. 2) 275 Fed. 294, 296, the court said:

"The record technically consists of the indictment, the bill of exceptions, and the judgment. The absence from the record of the bill of exceptions therefore simply precludes the court from passing on questions raised at the trial which the bill of exceptions might have brought here if one had been introduced into the record. Its absence does not, however, deprive us of the right to pass on the sufficiency of the indictment or the judgment. We are obliged to decide this case as though there was no demurrer to the indictment, no motion to quash, no motion for a new trial or in arrest of judgment, no exceptions to the admission or exclusion of evidence, and no objection to instructions given or withheld. We have no information concerning these matters. The sole question before us, under the circumstances, is whether the indictment fails to state facts sufficient to constitute the crime charged. If it thus fails, then, of course, it is the duty of the court to set aside the judgment. But if the facts alleged are sufficient to sustain the indictment, the judgment must be affirmed. Sonnenberg v. United States (C. C. A.) 264 Fed. 327."

After the jury was impaneled, and before any testimony was taken, the bill of exceptions shows the following proceedings:

"Mr. Siegel: If your honor please, before testimony is taken in the trial of this action, I have some motions to present to the court. (Papers were handed to the court.)

"The Court: Have you furnished the district attorney with a copy?

"Mr. Siegel: Yes.

"The Court: Ruling reserved. Testimony will be taken, and at the close of the case the motions will be considered further."

The motion papers handed up were all based on what it was assumed would be shown by the testimony to be offered in the case on the part of the defendants, and for that reason the motions were prematurely made, and this is the explanation of the above dialogue between the court and counsel, from a reading of which it will be seen that counsel did not press his motions at that time.

On pages 64 and 65 of the bill of exceptions appears the following:

"Mr. French: Before you interpose your objection, the government would like to offer in evidence, in connection with the government's proof, Government's Exhibit D, being the original search warrant.

"The Court: It may be received.

"Mr. Siegel: If your honor please, the defendants object to the introduction of any testimony relative to any search and seizure which was made under and pursuant to the search warrant, known as Government's Exhibit D, in the premises known and described as Government's Exhibit C, for the reason that it clearly appears that the search warrant which is in evidence was directed to 301 East Thirteenth street, in the city of St. Paul, Ramsey county, Minnesota; that from the diagram that part of the building is used as a grocery store and that nothing was found in that part of the building; for the further reason that the search warrant was not directed to that part of the building occupied as a private dwelling house, known as 'D' on the plat, and any search or seizure made at that point in that building was without authority of law."

If the reporter's transcript is correct, there was no ruling, for the reason that there was no evidence being offered at that time but the search warrant, and the objection was not directed against the search warrant, Exhibit D, and was not intended to be, as is apparent from the fact that on pages 112 and 113 defendant's counsel himself offered the search warrant in evidence. What counsel had in mind, and the thought he expressed, was that, when the government undertook to offer, not the search warrant, but the evidence procured in the execution of the search warrant, he would object to that testimony, which accounts for the fact that there was no ruling, because there was no occasion for a ruling, and none did arise until the government undertook to offer evidence obtained under the search warrant.

On page 66 of the bill of exceptions occurs the following proceedings:

"Mr. Siegel: If that is clear, if your honor please, the point I desire to bring out is this: That the search and seizure made in that part of the building, known as 'D,' was unlawful for the reason that the search warrant was not directed to that point, and for the reason that it clearly appears that the search warrant was directed to the point indicated on the plat as the grocery store, and that nothing was found there as the result of the search. We object to the introduction of any testimony tending to show the result of the search and seizure at this particular point as being unlawful, and violative of the constitutional rights of these defendants relative to searches and seizures, more particularly as a violation of the Fourth Amendment of the Constitution of the United States.

"The Court: Whose room do you claim it was, Mr. Siegel?

"Mr. Siegel: *While it does not appear in evidence, but it will come out later*, we claim that the defendant Berman lives in that part of the building,

which is his private residence, and has no connection with the grocery store proper.

"The Court: Objection is overruled at this time.

"Mr. Siegel: Exception."

It is perfectly apparent, from the statement of counsel, that the foundation for his objection had not yet been laid, but that he expected to lay it later, and it is equally apparent that the court did not permanently rule on the question, awaiting the laying of a proper foundation, as the language used was: "Objection is overruled at this time." This course was taken to afford the defendants an opportunity to subsequently lay the proper foundation for a motion to strike out, which motion was never made, and therefore it was never ruled upon.

When the government rested, the defendants proceeded to put in their case, and the evidence submitted tended to sustain the claim that Berman and his wife did live in a room immediately beyond the room D, and facing L'Orient street, connecting by a door with the room D; but at no time after the government rested did the defendants move to strike out the testimony, or any part of it, obtained by the use of the search warrant, nor did the defendants or their counsel, at the close of the testimony, move for an instructed verdict on the first or possession count; nor did he take any exceptions to the portions of the charge that submitted for the consideration of the jury the evidence obtained in the room D.

It is very difficult to understand how such a record can furnish any foundation whatever for the assignments of error presented, or how, if a writ of error were allowed, the question sought to be raised by the assignments of error could possibly be presented or argued in the appellate court. In Frame v. Portland Gold Mining Co. (C. C. A. 8) 108 Fed. 750, 751, 47 C. C. A. 664, 665, Judge Sanborn, speaking for the court, said:

"Rule 11 of this court * * * provides that 'the plaintiff in error or appellant shall file with the clerk of the court below, with his petition for the writ of error, * * * an assignment of errors which shall set out separately and particularly each error asserted and intended to be urged. No writ of error or appeal shall be allowed until such assignment of errors shall have been filed.' This is a just and reasonable rule. It makes the filing of the assignment of errors before the writ is allowed indispensable to its issue, to the end that the judge to whom application is made for its allowance may be informed what the alleged errors are upon which the petitioner relies, and may thus intelligently decide whether or not the prayer of his petition should be granted, and also to the end that the opposing counsel and the appellate court may be informed what questions of law are raised for consideration."

In Simpson v. First National Bank of Denver (C. C. A. 8) 129 Fed. 257, 261, 63 C. C. A. 371, 375, in an opinion by Judge Sanborn, it is said:

"In actions at law the assignment of errors must be filed and presented to the judge before the writ of error is issued or allowed, because he must determine, from an examination of it and of the petition for the writ, whether or not they set forth any substantial grounds for the issue of the writ."

This case was tried on the 27th day of June, 1923, and it is not questioned that the transcript was furnished and that there was abundant

opportunity to make a proper record. Five or sir weeks ago the defendants' counsel brought the matter to the attention of the court by presenting a bill of exceptions, which was allowed and signed; but, desiring to redraft his assignments of error, he asked for time for that purpose until the following day, and then permitted weeks to go by before presenting his redrafted assignments of error, and delayed until after it was too late for the case to be placed on the calendar for the December, 1923, term of the Circuit Court of Appeals; and when the redrafted assignments of error were presented, counsel's attention was called by the court to the fact that an exhibit vital to a proper presentation of the case to the appellate court was missing from the bill of exceptions, and he asked leave to supply the same, and notified the court on the following day that he had found the exhibit, and also another exhibit that should be in the bill of exceptions, and was advised to take up the matter with the district attorney and to act promptly in the matter, but has not been heard from since that time.

This case presents an instance of excessive and inexcusable delay, and it must be assumed, from the fact that the defendants' counsel is manifesting no interest in the case, that he has abandoned all thought of appellate proceedings. The petition for the allowance of a writ of error and supersedeas will be denied. It is so ordered.

In order that the defendant may be afforded an opportunity to make application to a judge of the Circuit Court of Appeals for a writ of error and supersedeas, if he be so advised, the execution of the sentence will be stayed for 10 days from and after the date of the filing of the order herein.

1. **Criminal law ⊛═1119(1)—Assignment of error held to have no basis in record.**
   An assignment of error, based on a ruling of the trial court on a motion submitted on affidavits, presents no question for review, where the affidavits are not contained in the record.

2. **Criminal law ⊛═695(6)—Single objection to exhibits properly overruled, if, any one is admissible.**
   Overruling of a single objection to exhibits offered in evidence was not error, if any one was admissible.

3. **Criminal law ⊛═656(2)—Directing counsel to confine cross-examination to matters relevant to issues not prejudicial.**
   Direction by the court to counsel for defendant, who was cross-examining a witness at length on a wholly immaterial matter, to confine his questions to matters relevant to the issues, *held* not prejudicial error.

4. **Criminal law ⊛═1054(1)—Exception must be taken to ruling excluding evidence to sustain assignment of error.**
   Exception is necessary to support an assignment of error to a ruling excluding evidence.

5. **Criminal law ⊛═762(2)—Expression of opinion by judge in charge not reversible error.**
   Expression of his opinion by the judge of a federal court in his charge that one or the other of two witnesses had committed perjury was not reversible error, where the ultimate question of fact was left to the jury.

⊛═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes